**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Fred Luther WILSON,
Defendant-Appellee.**

**No. 75–1944.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1976.
Decided April 22, 1976.

Eugene E. Siler, Jr., U. S. Atty., R. Burl McCoy, Richard E. Duerr, Jr., Lexington, Ky., for plaintiff-appellant.

Kelley Asbury, Catlettsburg, Ky. (Court-appointed CJA), for defendant-appellee.

Before WEICK, CELEBREZZE and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal by the Government from the dismissal of an indictment against Appellee charging him with violating 18 U.S.C. Appendix section 1202(a)(1) (1970), possession of a firearm by a convicted felon. The first trial had resulted in a mistrial and the Court concluded that any future attempts to retry Appellee would run afoul of the Double Jeopardy Clause of the Fifth Amendment.[1] The Government contends that reprosecution of Appellee on the firearms charge would not be barred by double jeopardy because 1.) the mistrial was declared on Appellee's motion, 2.) there was no indication on the record that the mistrial was caused by prosecutorial misconduct, and 3.) the declaration of mistrial was warranted by "manifest necessity." Appellee argues that the prosecutor precipitated the mistrial in order to delay the proceeding and allow the Government to locate a key witness who had failed to appear at trial.

On May 19, 1975, Appellee, Fred Luther Wilson, was brought to trial in the United States District Court for the Eastern District of Kentucky. A jury was impaneled and sworn. At the completion of the Government's opening statement,[2] Appellee moved to set aside the swearing of the jury because of the government attorney's reference to an arrest warrant charging Appellee with another crime. The District Judge denied the motion and the parties proceeded to trial. Prior to calling the first witness, the government attorney inquired of the Marshal whether a subpoena had been issued to Mr. Otis Wilson, Appellee's brother. The Marshal replied that he knew of no such subpoena. The Government then called Lonnie Dowdy, a Kentucky State Patrolman, as its first witness. After a series of preliminary questions, the Assistant United States Attorney asked the officer:

---

1. . . . [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . U.S.Const. amend. V.

2. The prosecutor's opening statement was not made part of the record on this appeal.

Q. What were the circumstances that led up to your meeting and seeing the defendant on that day?

A. Freddie Wilson's brother, Otis Wilson, brought a warrant on post for Freddie for malicious shooting and wounding.

The defense attorney immediately objected and moved that the swearing of the jury be set aside on the ground that informing the jury of an arrest warrant on a collateral offense was highly prejudicial to the defense. The prosecutor argued that the evidence was admissible and that a mistrial should not be declared. The Judge considered counsels' arguments and declared a mistrial. He concluded that evidence of an arrest warrant on a collateral state offense was irrelevant to the federal charge, highly prejudicial to the defense and that the prejudice could not be cured by admonition to the jury. Defense counsel then moved that the indictment against Appellee be dismissed because retrial would be barred by double jeopardy. The Judge took the motion under advisement and requested that the parties file briefs. At the hearing on the motion, the Judge refused to consider the defense argument that the government attorney had deliberately set out to cause a mistrial and delay the trial because a key witness was not available. The Judge restricted his inquiry to the record made at trial and concluded that the prosecutor had inadvertently caused the mistrial. Nevertheless, the Judge concluded that double jeopardy barred the reprosecution of Appellee on the firearms charge and that the circumstances surrounding the declaration of mistrial did not amount to "manifest necessity". In light of the Supreme Court's recent decision in *United States v. Dinitz,* —— U.S. ——, 96 S.Ct. 1075, 47 L.Ed.2d 267, 44 U.S.L.W. 4309 (1976), we reverse.[3]

■ Initially we note that Appellee's motion to dismiss the indictment on double jeopardy grounds was premature. Although Appellee was placed in jeopardy when the jury was sworn, *see Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), technically he has not yet been exposed to double jeopardy. The proper time to make such a motion would be after the Government had moved to reset the case for trial or the court, on its own motion, had set a retrial. However, to remand would be a fruitless gesture since the Government has indicated its intention to retry Appellee if possible and the same issue would undoubtedly be raised again on appeal.

■ As previously noted, jeopardy had attached when the first jury was selected and sworn. However, "in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973). The Fifth Amendment's prohibition against twice being placed in jeopardy is not absolute. Numerous exceptions have been recognized. *See id.* at 463, 93 S.Ct. at 1070, 35 L.Ed.2d at 430. Reprosecution is not barred after a conviction is reversed on appeal, *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), or where it is set aside on collateral attack. *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Mistrial declarations do not bar retrial when the jury is dismissed because they cannot reach a verdict, *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892), *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), due to the disqualification of a juror, *Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894), *Simmons v. United States,* 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), or because of tactical necessity in wartime. *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

■ The Double Jeopardy Clause serves two important policy functions: the protection of the accused from government

---

**3.** The District Judge, of course, did not have the benefit of *United States v. Dinitz* which was decided on March 8, 1976.

harassment by multiple prosecutions on the same offense, *see e. g., Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957), and the protection of the accused's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter, supra,* 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978. *See also United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 557 (1971); *Downum v. United States, supra* 372 U.S. at 736, 83 S.Ct. at 1034, 10 L.Ed.2d at 102. Balanced against the rights of an accused embodied in the Double Jeopardy Clause is society's interest "in fair trials designed to end in just judgments." *Wade v. Hunter, supra* 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978.[4] *See also Illinois v. Somerville, supra* 410 U.S. at 459, 93 S.Ct. at 1068, 35 L.Ed.2d at 428. This balance is reflected in the doctrine that where mistrial is declared over a defendant's objection the determination whether double jeopardy bars retrial depends on whether the mistrial declaration was warranted by "manifest necessity."[5] *See Illinois v. Somerville, supra*

at 459, 93 S.Ct. at 1068, 35 L.Ed.2d at 428. "Different considerations obtain, however, when the mistrial has been declared at the defendant's request." *United States v. Dinitz, supra,* —— U.S. at ——, 96 S.Ct. at 1080, 47 L.Ed.2d at 273, 44 U.S.L.W. at 4311. In *United States v. Dinitz, supra* at 4311, at ——, 96 S.Ct. at 1078–1079, 47 L.Ed.2d at 271–273, 44 U.S.L.W. at 4311, a majority of the Supreme Court adopted the reasoning of the plurality opinion in *United States v. Jorn, supra* 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556:

> If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. *Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution,*

4. Justice Harlan in *United States v. Tateo, supra* 377 U.S. at 466, 84 S.Ct. at 1589, 12 L.Ed.2d at 451, elaborated society's interest in reprosecuting a defendant whose first trial ended in mistrial:

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

5. This phrase is derived from Justice Story's commentary in *United States v. Perez, supra* 22 U.S. at 580, 6 L.Ed. at 165, on a judge's inherent authority to declare a mistrial over the objection of a defendant:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, tak-

ing all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

The "manifest necessity" standard requires an informed exercise of the court's discretion in declaring a mistrial. As the Court remarked in *Illinois v. Somerville, supra* at 464, 93 S.Ct. at 1070, 35 L.Ed.2d at 431:

> A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve "the ends of public justice" to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court.

However, even if there was a "manifest necessity" for mistrial, reprosecution will be barred by double jeopardy if the mistrial was caused by prosecutorial or judicial overreaching. *See Illinois v. Somerville, supra* 410 U.S. at 469, 93 S.Ct. at 1072, 35 L.Ed.2d at 433. *See also United States v. Tateo, supra* 377 U.S. at 467, 468 n.3, 84 S.Ct. at 1589–1590, 12 L.Ed.2d at 451–452. *See also* discussion at 12–13 *infra.*

*even if the defendant's motion is necessitated by prosecutorial or judicial error.* In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See *United States v. Perez,* 9 Wheat., at 580 [6 L.Ed. 165]. 400 U.S., at 485, 91 S.Ct., at 557, 27 L.Ed.2d, at 556. (footnote omitted).

[Emphasis added.]

The *Dinitz* majority reasoned that where a mistrial is declared on the defendant's motion in the face of judicial or prosecutorial error the objectives of the Double Jeopardy Clause are accomplished without sacrificing the public's interest in prosecuting individuals accused of violating the law:

. . . [I]t is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution. In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause—the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions.

—— U.S. at ——, 96 S.Ct. at 1080, 47 L.Ed.2d at 274, 44 U.S.L.W. at 4312.

■ Although a defendant's motion for mistrial ordinarily forecloses the possibility that reprosecution will be barred by double jeopardy, in *United States v. Dinitz* the Court distinguished between mistrials caused by judicial or prosecutorial error and those caused by judicial or prosecutorial "overreaching": [6]

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by the judge or prosecutor" threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *United States v. Jorn, supra* [400 U.S.] at 485 [91 S.Ct. 547 at 557, 27 L.Ed.2d at 556]; *Downum v. United States* [372 U.S.] at 736 [83 S.Ct. 1033, at 1034, 10 L.Ed.2d at 102]. See *Gori v. United States, supra* [367 U.S.] at 369 [81 S.Ct. 1523, at 1526, 6 L.Ed.2d 905]; *United States v. Jorn, supra* [400 U.S.] at 489 [91 S.Ct. 547, at 559, 27 L.Ed. at 558] (dissenting opinion); cf. *Wade v. Hunter, supra* [336 U.S.] at 692 [69 S.Ct. 834, at 838, 93 L.Ed. at 979].

Thus reprosecution is barred by double jeopardy where prosecutorial misconduct forces a defendant to move for a mistrial which operates as a "post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." *Illinois v. Somerville, supra* 410 U.S. at 469, 93 S.Ct. at 1073, 35 L.Ed.2d at 434. *See also United States v. Tateo, supra* 377 U.S. at 467, 468 n. 3, 84 S.Ct. at 1589–1590, 12 L.Ed.2d at 451–452.

Appellee argues that the prosecutor deliberately asked a question designed to elicit information from the witness which would inevitably lead to mistrial in order to delay the proceedings and allow the Government to obtain the testimony of Otis Wilson, a key prosecution witness. The Government admits that the prosecutor was aware of the arrest warrant on the separate offense before he asked the question, but argues that the line of examination was not intended to force mistrial. Although the Dis-

---

**6.** It is unclear from the *Dinitz* opinion whether "overreaching" is limited to intentional misconduct or whether it would extend to gross negligence on the part of judge or prosecutor which led to mistrial. *C. f.* Comment, *Double Jeopardy and Reprosecution After Mistrials: Is the Manifest Necessity Test Manifestly Necessary?,* 69 N.W.U.L.Rev. 887, 912 (1975).

trict Judge found that the witness's answer was responsive to the prosecutor's question, he concluded that the Government had inadvertently caused the mistrial. Appellee challenges the trial court's finding that mistrial was caused by prosecutorial negligence. Appellee claims that the Judge unduly restricted his examination to the record made at the abbreviated trial and refused to consider circumstances outside the record which would have supported the defense argument that the prosecutor had deliberately caused the mistrial to obtain the testimony of the missing witness. This appeal raises the question of the breadth of judicial inquiry into a claim of prosecutorial overreaching.

Appellee argues that this case should be controlled by *Downum v. United States, supra* 372 U.S. at 735, 83 S.Ct. at 1033, 10 L.Ed.2d at 101, where the Supreme Court barred the retrial of a defendant whose first trial had ended in the declaration of a mistrial on the prosecution's motion because a key government witness was missing on the day of trial. In *Downum* the Supreme Court accepted the reasoning of the Ninth Circuit in *Cornero v. United States,* 9th Cir., 48 F.2d 69, 71 (1931), that reprosecution of the defendant was barred by double jeopardy because the prosecutor had chosen to go forward with the swearing of the first jury

even though there was insufficient evidence to convict without the testimony of the missing witness. *Downum* has been interpreted by subsequent decisions as a case where the declaration of mistrial was subject to prosecutorial manipulation. *See Illinois v. Somerville, supra* 410 U.S. at 469, 93 S.Ct. at 1072, 35 L.Ed.2d at 433. *See also United States v. Tateo, supra* 377 U.S. at 467, 468 n.3, 84 S.Ct. at 1589–1590, 12 L.Ed.2d at 451–452. Other courts have expressed the view that prosecutors should not be allowed to maneuver a mistrial to cause a delay which allows the prosecution to strengthen its case.[7] *See McNeal v. Hollowell,* 481 F.2d 1145, 1150 (5th Cir. 1973). *See also United States v. Beasley,* 479 F.2d 1124, 1126–27 (5th Cir. 1973).

▮ The Government claims that *Downum* is distinguishable because here, unlike *Downum,* mistrial was granted on the defendant's motion, the prosecutor had decided to go ahead with the trial despite the witness's absence, and because the testimony of Otis Wilson, while material, was not key to the Government's case. If true, these facts would tend to dispel the suggestion of prosecutorial misconduct raised by Appellee. However, the scant trial record may be subject to quite different interpretation.[8] An appellate court is an inappro-

---

7. Justice Marshall in his dissenting opinion in *Illinois v. Somerville, supra* 410 U.S. at 482–83 n. 1, 93 S.Ct. at 1079, 35 L.Ed.2d at 442, suggests that *Downum* may represent the creation of a prophylactic rule in circumstances where a mistrial is declared when a key prosecution witness is absent the day of trial:

> *Downum* may perhaps be read as stating a prophylactic rule. While the evil to be avoided is the intentional manipulation by the prosecutor of the availability of his witnesses, it may be extremely difficult to secure a determination of intentional manipulation. Proof will inevitably be hard to come by. And the relations between judges and prosecutors in many places may make judges reluctant to find intentional manipulation. Thus, a general rule that the absence of crucial prosecution witnesses is not a reason for declaring a mistrial is necessary.

However, he admits that this suggestion arises from an implicit interpretation of *Downum* and appears nowhere in the opinion. Since this was not a case where the Judge declared a

mistrial based on the absence of a witness, the prophylactic rule suggested by Justice Marshall would not be applicable in any event. However, his comment on the difficulty of showing a prosecutor's intentional manipulation of a mistrial to secure the availability of a witness is relevant to the proof sought to be made by Appellee in this case, and is an additional reason that a District Court should undertake the broadest possible inquiry into the serious charge of prosecutorial manipulation. *See generally* Note, *Mistrial and Double Jeopardy,* 49 N.Y.U.L.Rev. 937, 951 (1974).

8. For instance, the prosecutor did not discover that a subpoena had not been issued to Otis Wilson, the accused's brother, until after the jury had been impaneled and he had made his opening statement. Faced with the prospect of going to trial without the testimony of a witness whose testimony was crucial to the prosecution, the prosecutor may have concluded that mistrial was his only hope of delaying the trial. If the Government had moved for mistrial based on the absence of a key witness, retrial

priate tribunal for deciding between competing factual inferences. The District Court is the proper fact finder where the defense claims prosecutorial overreaching. However, it would be difficult to imagine when a defendant could ever demonstrate prosecutorial bad faith if the District Court restricted its inquiry to the record made at an aborted trial. A District Judge must have wide latitude to inquire into all circumstances surrounding declaration of a mistrial and make findings of fact which may be reviewed on appeal. On the present state of the record, we cannot say with certainty that retrial of Appellee will not be barred by double jeopardy. On retrial, if Appellee chooses to renew his double jeopardy motion, the District Court should give full consideration to his claim that the mistrial was provoked by prosecutorial overreaching.

Reversed and remanded.

would appear to be barred under the *Downum-Cornero* rationale. The same result would be dictated if the prosecutor maneuvered the defendant into moving for mistrial by flagrant conduct which jeopardized the defendant's chance of acquittal by the first jury. On the other hand, the Government can argue that the prosecutor would have moved for a continuance if he wished to delay the proceedings and obtain the testimony of the missing witness. However, there may be some reason why a continuance after the jury had been impaneled would not be a viable alternative for the Government or the prosecutor may have realized his error in failing to move for a continu-

ance and thought that he could accomplish his objective by forcing a mistrial. Arguments based on the importance of Otis Wilson's testimony to the prosecution's case are also inconclusive on the present state of the record because the strength of the Government's case absent Wilson's testimony is unknown to us. Certainly, if the missing witness's testimony was crucial to conviction, Appellee's argument that the prosecution deliberately instigated a mistrial would be more convincing. These are all circumstances which the District Court should have considered in ruling on Appellee's motion and did not.