UNITED STATES of America, Appellee,

v.

Louis MARTIN, Appellant.

No. 77–1111.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1977.

Decided Aug. 22, 1977.

Henry L. Jones, Little Rock, Ark., for appellant; Wiley A. Branton, Washington, D. C., on brief.

Samuel A. Perroni, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., and Sandra W. Cherry, Asst. U. S. Atty., Little Rock, Ark., on brief.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Louis Martin was charged on November 4, 1975, in a two-count indictment in violation of 18 U.S.C. § 152. The first count charged Martin with making a false oath and account in relation to a bankruptcy proceeding, in that he filed a schedule representing that he and his wife had $50.00 on hand, wherein he fraudulently failed to disclose other assets of money and cash totalling $565.12. The second count charged Martin with fraudulently transferring and concealing assets in the amount of $2,060.12 in contemplation of bankruptcy. On May 4, 1976, Martin's first trial was terminated when the district court,[1] pursuant to Martin's motion, declared a mistrial. On November 29, 1976, Martin's second trial began and on December 1, 1976, the jury returned a verdict of guilty on both counts. The district court[2] sentenced Martin to 18 months' imprisonment on the first count and 2 years' supervised probation on the second count. In this appeal Martin alleges the following errors: (1) the district court erred in denying Martin's motion to dismiss the indictment because (a) the Double Jeopardy Clause barred Martin's retrial, (b) the government's conduct before the grand jury required dismissal, and (c) the government's conduct following the grand jury required dismissal; (2) the district court erred in failing to grant Martin's motion in limine; (3) the district court prejudiced the jury by the manner in which it questioned Martin's expert witness; (4) the district court erred in refusing to give one of Martin's requested instructions and in giving one of the government's requested instructions. We are persuaded that under the circumstances of this case, the Double Jeopardy Clause of the Fifth Amendment[3] barred Martin's retrial. Accordingly, we reverse.

---

1. The Honorable Terry L. Shell, United States District Judge for the Eastern District of Arkansas.

2. The Honorable Paul X Williams, United States District Judge for the Western District of Arkansas, sitting by designation.

3. United States Constitution, Amendment V, provides: "No person * * * shall * * * be subject for the same offence to be twice put in jeopardy of life or limb."

*Background*

On December 16, 1974, Martin, a lawyer employed by Pulaski County, Arkansas, and his wife, employed by the state of Arkansas, filed their voluntary petition in bankruptcy in the Eastern District of Arkansas. The petition contained a schedule of debts which listed eight creditors and a total indebtedness of $19,447.62. Of the total indebtedness, $18,382.61 represented debts that Martin and his wife owed to six student loan creditors.

Before evidence was presented in his first trial, Martin filed a motion in limine requesting that the district court prohibit any mention or reference to student loans and exclude any documents referring to student loans or that reference to student loans be excised. Martin attached as exhibits to his motion in limine 22 *Arkansas Gazette* newspaper articles illustrating the publicity which accompanied his attempt to discharge the student loan debts. In addition to the newspaper articles, affidavits by Martin and his wife were filed attesting to obscene and racial remarks directed at the Martins as a result of their bankruptcy petition. Martin's counsel stated to the court during the hearing on the motion that the defense would agree to stipulate "to the amount of money in certain accounts at a certain time, when that money went to the account and when it left the account." The purpose of this stipulation was to avoid the mentioning of student loans.

Following a lengthy hearing, the district court granted Martin's motion in limine. While ruling on the motion, the court stated to the government's attorney:

> You cannot use student loans. And I admonish you not to unduly use loans and lending institutions. * * * Talk about debts, or use other words, because the Court is sincere in believing that there has been an undue amount of publicity to the extent that Louis Martin will be prejudiced if student loans or an undue emphasis on loan and lending institu-

tions is used to the extent that would infer indirectly what I am telling you not to do directly.

A short time later the district court clarified his ruling by stating to the government's attorney:

> I am going to back up at this time and clarify the ruling by saying that you cannot name the specific creditors. * * * I have got to rule that you cannot name the specific creditors.
> 
> * * * So, when I ruled, and to clarify my ruling further, I will say that you cannot go into it, name the creditors, and go beyond that into the making of the loans * * *.

In addition to his motion in limine, Martin asked the district court at this time to prohibit the government's attorney from reading Martin's grand jury testimony to the jury as substantive evidence. Appellant argued that most of the statements contained in Martin's grand jury testimony were irrelevant and prejudicial. The government's attorney, however, assured the court that the irrelevant statements contained in the grand jury testimony had been excluded. The district court denied Martin's request but cautioned the government that the use of Martin's grand jury testimony must not violate any of the court's prior rulings. In addition, the court indicated that Martin's objection to the use of the grand jury testimony would be treated as a continuing objection.

Early in the trial, after two witnesses had testified for the government, the government's attorney read a substantial portion of Martin's grand jury testimony to the jury. As a result the appellant subsequently moved for a mistrial. The district court, in granting the mistrial, stated:

> I feel that error has been made and it will be reversed on appeal, if there is a conviction. And so the Court feels that there is no alternative other than to declare a mistrial at this point.

Between the first and second trials, Martin filed a motion to dismiss the indictment, contending in part that the United States Attorney had engaged in an *ex parte* conversation with Judge Shell on the day of the mistrial declaration. In anticipation of being called as a witness at the hearing on the motion, Judge Shell recused himself. The case was then assigned to Judge Williams.

In addition to alleging the *ex parte* conversation, Martin contended that the Double Jeopardy Clause barred a second trial and that the government's conduct before the grand jury required a dismissal of the indictment. The appellant also renewed all motions filed in the first trial including the motion in limine. After a hearing was held, Judge Williams denied Martin's motion to dismiss the indictment and the motion in limine.[4]

The second trial began on November 29, 1976, and Martin again renewed his motion in limine. The district court denied the motion and allowed the evidence concerning student loans. Martin was subsequently found guilty by the jury on both counts of the indictment.

Martin raises numerous issues in this appeal. In light of the total circumstances of the case, we need only discuss his Double Jeopardy claim.

*Double Jeopardy*

The dispositive question on this appeal is whether the Double Jeopardy Clause was violated by a retrial of Martin after the first trial ended in a mistrial granted at Martin's request.

■ The Fifth Amendment's prohibition against placing a defendant "twice in jeopardy" represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings. *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27

L.Ed.2d 543 (1970). The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

■ In analyzing the question of whether the Double Jeopardy Clause bars a retrial of a defendant after a mistrial declaration, the Supreme Court has distinguished cases where mistrials are declared *sua sponte* by the court and cases where mistrials are granted at the defendant's request or with his consent. In the former, the defendant is precluded from deciding whether or not to take the case from the jury—a decision in which the defendant has a significant interest. *United States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. 547. Because of the defendant's preclusion in this important decision, the Double Jeopardy inquiry focuses upon the "manifest necessity" for the mistrial. *See United States v. Dinitz*, 424 U.S. 600, 606–08, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn, supra,* 400 U.S. at 480–81, 91 S.Ct. 547; *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824).

■ Different considerations obtain when a mistrial is declared at the defendant's request. *United States v. Dinitz, supra,* 424 U.S. at 607, 96 S.Ct. 1075. The Double Jeopardy Clause generally would not stand in the way of reprosecution where the defendant has requested a mistrial. *Lee v. United States*, —— U.S. ——, ——, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United*

---

4. The trial court, in denying Martin's Double Jeopardy claim, stated the following: "[W]e find that the government's errors which led to a mistrial did not amount to intentional misconduct or gross negligence." The court noted that both of the Assistant United States Attorneys who tried the case for the government submitted affidavits in which they swore that their actions were not intended to abort the trial and that they considered the grand jury testimony admissible evidence relevant to Martin's intent.

*States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. 547. The Supreme Court has recognized, however, limited circumstances where a defendant's mistrial request does not remove the Double Jeopardy bar. For example, the Double Jeopardy Clause protects a defendant against governmental actions intended to provoke mistrial requests. *United States v. Dinitz, supra,* 424 U.S. at 611, 96 S.Ct. 1075. It bars retrials where the underlying error is "motivated by bad faith or undertaken to harass or prejudice" the defendant. *United States v. Dinitz, supra,* 424 U.S. at 611, 96 S.Ct. at 1082. Thus, where "prosecutorial overreaching" is present, *United States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. 547, the interests protected by the Double Jeopardy Clause outweigh society's interest in conducting a second trial ending in acquittal or conviction. *United States v. Kessler,* 530 F.2d 1246, 1255–56 (5th Cir. 1976). *See United States v. Wilson,* 534 F.2d 76, 80 (6th Cir. 1976).

Our inquiry, therefore, must center upon the prosecutor's conduct prior to the mistrial in order to determine if there was prosecutorial overreaching. Although mere negligence by the prosecutor is not the type of overreaching contemplated by *Dinitz,* if the prosecutorial error is motivated by bad faith or undertaken to harass or prejudice the defendant, then prosecutorial overreaching will be found. *Lee v. United States, supra,* —— U.S. at ——, 97 S.Ct. 2141. *See United States v. DiSilvio,* 520 F.2d 247, 249–50 (3d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975).

Appellant's major contention of prosecutorial overreaching is found in the reading of Martin's grand jury testimony to the jury. Although Martin does not contend the government read the grand jury testimony to intentionally provoke a mistrial request, he does allege that the government was grossly negligent in so doing.

Our review of the record convinces us that the prosecutor's conduct in reading the grand jury transcript was more than mere prosecutorial negligence. The following excerpts are illustrative of the irrelevant and highly prejudicial material which was read to the trial jury by the government's attorney:

Q. [prosecutor] Well, I am not going to give your attorney a dissertation of the federal laws. You can simply advise your attorney the Grand Jury is charged with an investigation of all the federal laws of the United States of America. I don't know what the Grand Jury might determine after hearing your statement, but to tell us to pinpoint this or that I am not at liberty to do so.

When they are empaneled, the Court hands to them the entire federal law, the Penal Code.

\* \* \* \* \* \*

Q. You say this is similar to Watergate mentality?

\* \* \* \* \* \*

Q. Well, if it turns out to be, Mr. Martin, you engaged in activities similar to Watergate activities, would it not be proper for the Grand Jury to say you should be charged like anybody else?

\* \* \* \* \* \*

Q. Some people feel that Watergate investigations are good.

\* \* \* \* \* \*

Q. Mr. Martin, anything wrong with answering?

\* \* \* \* \* \*

Q. [grand juror] You are saying you could have lied on the petition?

\* \* \* \* \* \*

Q. [prosecutor] You only took five hundred but had a thousand coming? You have filed a lot of bankruptcy petitions?

\* \* \* \* \* \*

Q. [grand juror] If you filled it out, it looks like you would find out how much money you had. You would check at Worthen Bank, look in your billfold and find out how much you had. You

wouldn't happen to overlook five hundred dollars.

Q. [prosecutor] We are not talking about fifty cents; seventy-five cents.

\* \* \* \* \* \*

[grand juror] I don't know why he has to hesitate.

[grand juror] You know whether you lied on the form or not.

\* \* \* \* \* \*

Q. [grand juror] Wait a minute. You are not going to tell us you had a thousand dollars cash and you don't know what you did with it?

\* \* \* \* \* \*

Q. This five hundred dollars, you are not going to tell me you cashed a check for five hundred dollars and you don't know what you did with it? Don't tell us that.

\* \* \* \* \* \*

Q. You come up with an answer for that because I am really mad at you, telling us you had cashed a check for five hundred dollars and you don't know what you did with it.

\* \* \* \* \* \*

Q. [prosecutor] You do know how to do one of these things?

A. Just in doing that one. I haven't done any since or before.

Q. [prosecutor] You did such a good job on this one.

\* \* \* \* \* \*

Q. [grand juror] The problem is getting a thousand dollars within a two-week period before declaring bankruptcy and cashing checks, is kind of inconceiva-ble you would put down fifty dollars on the bankruptcy petition.

\* \* \* \* \* \*

Q. [grand juror] What was the date on that?

[prosecutor] November 14, 1974.

Q. [grand juror] Four weeks before filing for bankruptcy?

\* \* \* \* \* \*

Q. [grand juror] The people you owe were at your mercy to get their money back until like your bankruptcy petition discharged them, but you don't want to say—

A. Legally discharged, but normally what happens we would renegotiate a note.

Q. [prosecutor] They may or may not be discharged, Mr. Martin. You want to think about that a day or two?

It is readily apparent that improper and prejudicial remarks made by grand jurors were read to the trial jury. In addition improper and prejudicial remarks made by the prosecutors were read to the jury. The record is replete with instances where the defendant was interrupted in his answers or was not given an opportunity to answer. In addition, at one point the prosecutor in effect testified by answering a question posed by a grand juror. If the government's actions in reading this irrelevant and highly prejudicial testimony to the jury were not intentionally designed to provoke a mistrial request, at a minimum they constitute gross negligence. It can best be described as prosecutorial error undertaken to harass or prejudice the defendant—prosecutorial overreaching.[5]

---

5. A persuasive argument can also be made that the following excerpts read to the jury indirectly violated the district court's ruling on the defendant's motion in limine:

Q. [prosecutor] See if we can get this straight, Mr. Martin. You are an attorney. You have been to school for many, many years now.

\* \* \* \* \* \*

Q. You got rid of nineteen thousand dollars—why did you take bankruptcy?

\* \* \* \* \* \*

Q. If I told you you made deposits of four thousand three hundred and seventeen dollars to your savings account at Iowa State in '73, that wouldn't hardly jive with your income, would it?

A. No, it wouldn't.

Q. And the thousand dollars you deposited in the Friendship Savings and Loan in August, '73, that added with the five thousand you placed in the bank in '73.

Q. Where did you get the money?

Q. [grand juror] Is that a checking or savings?

Martin has shown the presence of anxiety, embarrassment and expense caused by his retrial. Under these circumstances we hold that the district court erred in denying Martin's motion to dismiss the indictment. Prosecutorial overreaching in the reading of the grand jury testimony to the trial jury gave appellant no choice except to move for mistrial and subject himself to the ordeal of another trial. We conclude Martin's constitutional right not to be twice put in jeopardy has been violated. Accordingly, we reverse appellant's conviction and direct that the indictment be dismissed.

Reversed.

HENLEY, Circuit Judge, dissenting.

I disagree with my learned colleagues both on the law and on inferences to be drawn from the facts.

Before the first trial commenced the government gave notice that the grand jury testimony of Martin would be offered in evidence. That testimony was read in evidence over a permitted continuing objection with the prosecutor having assured the court that irrelevant statements had been excluded. The assurance proved to be in error since as the majority recites at pages 139–140 of its opinion some irrelevant and prejudicial material was read to the jury.

As the prejudicial material was being read the defendant made no additional objection but quite properly contented himself with his continuing objection made initially. Nor did the trial judge at any point sustain the continuing objection or call to attention of the prosecutor the possible error in assurance previously given.

The entire grand jury testimony read extended over some thirty-two pages of transcript. After the reading defendant moved for a mistrial. Judge Shell, believing that error had been committed in connection with admission of some of the material, granted a mistrial.

    A. We must have got more than that—
    \*    \*    \*    \*    \*    \*
    Q. [prosecutor] You fully intended to pay back but thought you would wash them off anyway?

At the second trial and in denying a plea of double jeopardy, Judge Williams found on the part of the prosecutor no intentional misconduct or gross negligence. On appeal the defendant makes no contention of intentional misconduct designed to provoke a mistrial; he does allege gross prosecutorial negligence.

The majority makes no effort to review the findings of Judge Williams under any appropriate standard. It relegates mention of his crucial findings on lack of misconduct and gross negligence to its footnote 4 and makes it own independent finding of "prosecutorial error undertaken to harass or prejudice the defendant."

I would accept the findings of Judge Williams, an experienced and conscientious trial judge, as not being clearly erroneous. It is clear that in the course of the ongoing first trial it was error to read into the record some substantial portions of the grand jury testimony but I find in the record no egregious error on the part of the prosecution of such consequence as to impel a finding of intentional harassment or intent to abort the trial.

It has generally been the rule that the double jeopardy clause does not prevent reprosecution when the first trial has ended in a mistrial declared upon motion of the defendant. *Lee v. United States,* —— U.S. ——, ——, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Parker v. United States,* 507 F.2d 587 (8th Cir. 1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1576, 43 L.Ed.2d 782 (1975); *Roberts v. United States,* 477 F.2d 544 (8th Cir. 1973).

But presently it must be conceded to the majority that within limitations a defendant's mistrial motion may not remove the double jeopardy bar. It is the nature and extent of these limitations that precipitate this dissent.

    A. At that particular time, talking about gross, talking about that, what I was, I was going to have to take care of the family on seven hundred and seventy dollars and pay back that amount of loan.

*Lee v. United States, supra; United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); and *United States v. Jorn, supra,* all contain dicta tending to cause one to suspect that there may be circumstances in which prosecutorial misconduct, or even perhaps some day prosecutorial negligence in some degree, will invoke double jeopardy, but the majority cites, and I can find, no Supreme Court case on appropriate facts holding that gross negligence or intentional prosecutorial trial error not calculated to produce a mistrial will support a claim of double jeopardy by one who moves for mistrial.[1]

In my view, *Lee, Dinitz* and *Jorn,* all *supra,* do not require in this case a departure from the general rule. When read in full, both *Dinitz* and *Jorn* seem to require that the prosecution act with intent to induce a request for mistrial by defendant before prosecutorial overreaching will be found or to require a design on the part of the prosecution to prejudice the defendant by procuring a trial at a different time and under circumstances less favorable to the defendant. It is conceded that no such design on the part of the prosecution was present in the case at bar.

Moreover, the broad reach of double jeopardy to be applied by the majority presents practical problems. I agree with Judge Bell's dissent in *United States v. Dinitz,* 492 F.2d 53, 63 (5th Cir. 1974), stating that:

> [T]he *ratio decidendi* is too extreme to be workable and will give rise to much reluctance in granting mistrials. The trial courts will understand that society will be better served by completing a trial even after clear error has arisen and the de-

fendant seeks a mistrial, then the alternative of a mistrial and the possible bar of double jeopardy based on error. The time and expense involved in completing the trial, taking an appeal, and in the retrial, will often be a small price to pay to protect the societal interest in law enforcement.

Accordingly, I cannot vote to reverse on double jeopardy grounds.

---

1. The majority cites *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976), for the proposition that error "motivated by bad faith or undertaken to harass or prejudice" the defendant bars retrial. This quotation may be deceptive when taken out of context. However, when read along with the two preceding paragraphs, it is clear that *Dinitz* requires bad faith harassment intended to goad the defendant into requesting a mistrial before reprosecution will be barred. A careful reading of *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), likewise does not fully support the ma-

jority opinion here. Analysis of footnote 12 following the discussion of overreaching indicates that *Jorn* requires that the prosecutorial impropriety justifying mistrial must result from a fear of acquittal, thus retaining the traditional intent element, before reprosecution will be barred.

*United States v. Wilson,* 534 F.2d 76, 80 (6th Cir. 1976), cited in support of the majority opinion, states that it is unclear from the *Dinitz* opinion whether "overreaching" would extend to gross negligence on the part of a prosecutor which led to mistrial.