UNITED STATES of America, Appellee,

v.

Joseph Burton KING, Appellant.

No. 78–1286.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Oct. 5, 1978.

Rehearing and Rehearing En Banc
Denied Feb. 9, 1979.

Certiorari Denied March 26, 1979.
See 99 S.Ct. 1538.

James R. Wyrsch, Kansas City, Mo., for appellant.

Gene C. Napier, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on the brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant King was indicted on each of two counts of an indictment charging wire fraud in violation of 18 U.S.C. § 1343. He entered pleas of not guilty and was tried to a jury and convicted on both counts.[1] Defendant has taken a timely appeal from his conviction.

Defendant was jointly indicted on each count with Louis K. Bohr. Bohr and King were tried jointly. On the first trial a mistrial was declared by reason of the inability of the jury to agree upon a verdict. On the second trial King on his own motion was granted a mistrial and a severance because of prejudicial remarks made in the presence of the jury by counsel for Bohr. The trial continued as to Bohr. He was convicted on both counts, his conviction was affirmed. *United States v. Bohr*, 581 F.2d 1294 (8th Cir. 1978).

Defendant relies upon the following points for reversal:

I. Prejudicial error in admitting hearsay evidence as to (a) phone calls between Ball and King, (b) testimony of police chief of a license check identifying King as owner of a car, and (c) a phone bill showing interstate calls between Ball and Benes.

II. Error in overruling defendant's motion for acquittal and giving certain instructions because there was no evidence that defendant had caused any radio or wire communications.

III. Failure to dismiss on the ground of double jeopardy and on the basis of the *Petite* policy.

IV. Error in admitting testimony concerning prior identification of King by use of photographic displays.

We reject each of such contentions and affirm for the reasons hereafter set out.

1. He was sentenced to forty-two months imprisonment on Count I with all but six months of the sentence suspended with a three-year period of probation to follow the six months of incarceration. On Court II defendant was fined $1,000 and given a three-year probation period to run concurrently with the probation imposed with respect to Count I.

The evidence in the present case is substantially the same as that in the *Bohr* case and many of the contentions there made are raised here. The facts in connection with the fraudulent wire record are quite fully set out in the reported *Bohr* opinion. We will summarize the pertinent facts very briefly.

King approached Ball in an effort to sell him about 900 cans of Treflan which King claimed had been seized by the sheriff at Mount Vernon at a price of about one-half its value. This was more Treflan than Ball could handle. He made several phone calls to Mr. Benes, a friend in Nebraska, whom he thought might be interested. King was so advised and was later told that Benes approved of the deal and that it could be completed. Benes provided Ball with $35,000. Ball, as directed by King obtained a check to the county treasurer for $4,500 and obtained $32,000 in cash. King led Ball to Bohr who was introduced as a deputy sheriff who had handled the sale transaction. Ball gave Bohr the $4,500 check made out to the county and $31,740 in cash. Bohr advised Ball that he would have to go to the courthouse to get appropriate receipts and that he would return in fifteen minutes to complete the transaction. He never returned and Ball never recovered his money nor did he obtain the Treflan.

## I.

No prejudicial error was committed in admitting evidence of phone calls between King and Ball. King met Ball on a number of occasions and had occasion to be familiar with his voice. Moreover, Ball met King at the time and place agreed upon in the phone calls. This constitutes strong circumstantial evidence adequate to establish the admissibility of the phone calls. *United States v. Biondo*, 483 F.2d 635, 644 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974).

Police Chief Pendleton was asked to investigate a suspicious parked car in Mount Vernon at a time relevant to the transactions here involved. He caused a license check to be made and reported that the car was owned by Joseph B. King. Additionally at the trial three certified documents of the Missouri Department of Revenue were received in evidence showing King's ownership of the automobile. Such documents are admissible as public records under Fed.R.Evid. Rule 803(8) or 803(24). No prejudicial error was committed in receiving the exhibits showing the ownership of the car in question to be in defendant King. The apparent purpose of the evidence was to show King's presence in Mount Vernon.

Walter Ball testified he placed telephone calls from Missouri to Benes at Valparaiso, Nebraska, on April 19 and April 21, 1971, and Benes testified to receiving such calls. In addition, the court received in evidence the telephone bill charging these three calls to Mr. Ball. The bill would appear to be properly admissible as a business record. In any event, no prejudicial error was committed as both Ball and Benes testified such calls were made.

## II.

The district court did not commit error in denying defendant's motion for acquittal. Ball positively testified that he was calling a friend in Nebraska about the purchase of the Treflan and that the call was made with the knowledge and approval of the defendant.

A further contention is made that part of the interstate telephone call may possibly have been carried in part by microwave and hence would not constitute a wire or radio communication within the meaning of § 1343. We specifically rejected such contention in *Bohr, supra*, and adhere to the view there expressed.

## III.

Defendant makes two contentions that the prosecution is barred by double jeopardy. Defendant relies on *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977), to support his contention. While double jeopardy was applied in *Martin*, that

case is factually distinguishable. As stated in *Martin* :

> The Double Jeopardy Clause generally would not stand in the way of reprosecution where the defendant has requested a mistrial. *Lee v. United States*, 432 U.S. 23, 32–33, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1970); *United States v. Jorn, supra*, 400 U.S. at 485, 91 S.Ct. 547, [27 L.Ed.2d 543]. The Supreme Court has recognized, however, limited circumstances where a defendant's mistrial request does not remove the Double Jeopardy bar. For example, the Double Jeopardy Clause protects a defendant against governmental actions intended to provoke mistrial requests. *United States v. Dinitz, supra*, 424 U.S. at 611, 96 S.Ct. at 1075, [47 L.Ed.2d 267]. It bars retrials where the underlying error is "motivated by bad faith or undertaken to harass or prejudice" the defendant. *United States v. Dinitz, supra*, 424 U.S. at 611, 96 S.Ct. at 1082. Thus, where "prosecutorial overreaching" is present, *United States v. Jorn, supra*, 400 U.S. at 485, 91 S.Ct. at 547, the interests protected by the Double Jeopardy Clause outweigh society's interest in conducting a second trial ending in acquittal or conviction. *United States v. Kessler*, 530 F.2d 1246, 1255–56 (5th Cir. 1976). *See United States v. Wilson*, 534 F.2d 76, 80 (6th Cir. 1976).

561 F.2d *supra*, at 138–39. See also Judge Henley's dissenting opinion, at 141–42.

In *Martin* the court found that material prosecutorial misconduct existed based on the fact that extensive immaterial and prejudicial Grand Jury testimony was read to the jury by the prosecutor over defendant's objection and after court admonition not to read irrelevant statements.

■ No such situation exists in the present case. The error on which the mistrial was granted was based upon a statement made by counsel for co-defendant Bohr which the court found to be prejudicial. We hold that this is not the exceptional type of case where the underlying error is motivated by bad faith on the part of the prosecutor or undertaken to harass or prejudice the defendant. The court properly denied defendant's double jeopardy contention.

■ Additionally defendant raises the issue that he is being prosecuted by both the federal and the state government for conduct arising out of the same transaction. Double jeopardy does not protect a defendant from prosecution for the same offense by different sovereigns. *United States v. Wheeler*, 435 U.S. 313, 315, 98 S.Ct. 1079, 1082, 55 L.Ed.2d 303 (1978).

■ Additionally defendant claims that under the *Petite* policy[2] the court failed to dismiss the indictment. In 1959 the then Attorney General Rogers in a press release and letters to United States Attorneys indicated that both federal and state prosecutions should not be pursued without approval of the Attorney General. The enforcement of such policy, if still in effect, lies with the Attorney General and an individual defendant cannot avoid prosecution on the basis of this policy. No cases have been cited which support the right of an individual to seek a dismissal on the basis of the *Petite* policy. In *United States v. Hutul*, 416 F.2d 607, 626–27 (7th Cir. 1969), the court holds:

> Finally, we reject defendant Hutul's contention that his prosecution was without Government authority and therefore void. Defendant rests his argument on an April 6, 1959 press release of the Attorney General of the United States which stated that permission should be obtained from his office by a United States Attorney before the latter prosecutes a case when there has been an earlier state prosecution for substantially the same act. (See *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)). Since such permission was not obtained in the present pros-

---

**2.** *See Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960); *United States v. Wallace*, 578 F.2d 735 (8th Cir., 1978.)

ecution, defendant Hutul argues, it was without Government authority and void.

We disagree. A letter, press release, or similar statement by the Attorney General, which is not promulgated as a regulation of the Justice Department and published in the Federal Register, cannot serve to invalidate an indictment returned by the Grand Jury. Rather, such a statement is merely a "housekeeping provision" of the Justice Department and is so limited in its effect. *Sullivan v. United States*, 348 U.S. 170, 173, 75 S.Ct. 182, 99 L.Ed.2d 210 (1954). We agree with the above statement. Moreover, in our present case no conviction or acquittal had been obtained in the state litigation. The federal conviction occurred prior to any disposition of the state litigation. Hence, we do not have a situation where a defendant has been convicted by both the federal government and the state for the same offense.

The trial court properly found upon the basis of substantial evidence, including that of the state's attorney, that the United States Attorney had not exerted any pressure upon the state prosecution in connection with pending state plea bargaining. The court upon the basis of the facts before it committed no error in refusing to dismiss the case upon the basis of the *Petite* policy.

### IV.

 No error was committed in allowing witnesses to testify with respect to their pretrial identification of defendant in a photographic line-up which took place shortly after the offense here involved. The trial court, after an evidentiary hearing, found that the photographic line-up was fairly conducted and such view has full support in the evidence.

 Defendant contends that the photographic identification testimony does not meet the hearsay exception of Fed.R.Evid. Rule 801(d)(1)(C). A similar contention was rejected by the Second Circuit in *United States v. Marchand*, 564 F.2d 983, 996–97. We agree with such determination.

 In any event, the in-court identification of the defendant upon the basis of ample opportunity to observe the defendant at the time of the offense is strong and no prejudicial error was committed in receiving the photographic evidence.

Our review of the record upon the basis of the errors asserted convinces us that the defendant has had a fair trial, that no prejudicial error has been committed and that the conviction should be and is affirmed.