**UNITED STATES of America, Plaintiff,**

v.

**Carmen J. CIVELLA, Defendant.**

**No. 80–00054–01–CR–W–4.**

United States District Court,
W. D. Missouri, W. D.

March 11, 1982.

Robert E. Larsen, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

James R. Wyrsch, Kansas City, Mo., for defendant.

ORDER

RUSSELL G. CLARK, Chief Judge.

On May 13, 1980 the government filed a three count indictment charging defendant

with violations of 26 U.S.C. §§ 7206(2), 7201, and 7203 respectively. Defendant was convicted on all three counts following a jury trial held on November 17–24, 1980. On January 29, 1981 the Court entered a judgment of acquittal on Count I, granted defendant's motion for a new trial on Count II, and denied defendant's motions as to Count III. On February 6, 1981 defendant appealed his conviction on Count III and this Court's denial of his motions for acquittal and for arrest of judgment to the United States Court of Appeals for the Eighth Circuit. On March 9, 1981 this Court granted defendant's motion to stay all trial court proceedings pending the outcome of defendant's appeal. On June 2, 1981 the Eighth Circuit dismissed defendant's appeal as to Count II of the indictment for lack of jurisdiction and in an order dated December 4, 1981 affirmed defendant's conviction on Count III.

On December 23, 1981 defendant filed a motion to dismiss Count II of the Indictment with prejudice and requested a hearing on his motion. On December 30, 1981 this Court, pursuant to 28 U.S.C. § 636(b) and Local Rule 26, referred defendant's motion to Chief United States Magistrate Hamilton. On January 8, 1982 defendant filed a sweeping discovery motion requesting from fourteen federal and state law enforcement agencies production of every document which might be relevant to defendant's motion to dismiss Count II. On January 12, 1982 Chief Magistrate Hamilton convened an evidentiary hearing on defendant's motions to dismiss and for discovery. On January 29, 1982 Chief Magistrate Hamilton submitted proposed findings of fact and recommended that defendant's motions be denied. On February 5, 1982 defendant filed his objections to the Magistrate's findings of fact and recommendations. Having carefully reviewed the report submitted by Chief Magistrate Hamilton, the transcript of the Magistrate's hearing, defendant's trial transcript, and the complete record of this case, the Court will adopt the Magistrate's findings of fact as outlined herein and will deny defendant's motions for discovery and for dismissal of Count II.

Defendant contends in essence that the government's handling of statistical evidence during defendant's trial caused a mistrial, constituted gross negligence, was intended to deprive defendant of his right to an acquittal, and that, consequently, the Double Jeopardy Clause of the Fifth Amendment bars retrial of Count II. The basic policy on which defendant bases his motion to dismiss is that "the state, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *United States v. Martin,* 561 F.2d 135, 138 (8th Cir. 1977). This policy, embodied in the Double Jeopardy Clause, protects a defendant "against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (citations omitted). The Supreme Court, however, has distinguished cases in which mistrials are declared *sua sponte* by the Court from cases in which mistrials are granted at the defendant's request or with his consent. In the former situation a showing of "manifest necessity" for the mistrial is required before a retrial will be permitted. *United States v. Jorn,* 400 U.S. 470, 480–81, 91 S.Ct. 547, 554–555, 27 L.Ed.2d 543 (1971). In the latter situation retrial is prohibited only when the underlying error is motivated by bad faith or undertaken to harass or prejudice the defendant. *United States v. Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081. The Eighth Circuit has indicated that gross negligence which results in a mistrial may constitute "prosecutorial overreaching" for purposes of the Double Jeopardy Clause. *United States v. Martin,* 561 F.2d at 140. Since retrial of Count II in this case results solely from defendant's post-trial motion for a new tri-

al, the Court must find the presence of prosecutorial overreaching before the Double Jeopardy Clause may be applied.

Chief Magistrate Hamilton reviewed defendant's court file, the transcript of defendant's trial, the stipulated testimony, the testimony of witnesses called at defendant's evidentiary hearing, and Special Agent Malcolm's report before making his proposed findings of fact. Defendant objects only to those findings numbered 15 through 21 inclusive, 23, 33–38 inclusive and numbers 1(a), (c), (d), (e), 2(a), (b), (c), 3 and 4. Defendant claims that certain trial testimony of Dr. Carlson, plaintiff's statistical expert, and of Charles Carpenter, plaintiff's informant, contradicts the Magistrate's findings enumerated above. With the few exceptions noted below, this Court disagrees.

Defendant contends initially that Dr. Carlson was not informed by plaintiff of variables which detracted from the reliability of his statistical projections. Specifically defendant claims that Dr. Carlson was not informed by plaintiff of changes in liquor prices or that friends of the owners and various celebrities were admitted without cover charge into defendant's nightclub. When questioned on these issues at trial, however, Dr. Carlson did not deny being so informed, but stated merely that he did not recall receiving the information (Tr. 458, 459). Dr. Carlson further testified that he *was* informed concerning the existence of "ladies nights," the varying ability of some bands to draw customers, and the occasional absence of live entertainment at defendant's club, but that he *was not* informed of the specific dates or nights on which those events occurred (Tr. 465). Dr. Carlson also testified that he was not informed of specific door charge amounts nor whether the door charge was imposed and later lifted during specific evenings (Tr. 465). The Court finds that the testimony of Dr. Carlson does not conflict with any of the findings of fact proposed by the Magistrate with the exception of numbers 17(b), (c), 23, and 1(c), (d).

Defendant also asserts that although Dr. Carlson admitted at trial the importance and relevance of information concerning the percentage of bar register income attributable to freely admitted patrons, plaintiff never provided that information. The Court notes initially that the record fails to support defendant's basic assumption that persons admitted free generally purchased their liquor at the bar. Charles Carpenter specifically denied that conclusion at trial (Tr. 159). Carpenter's testimony, at most, implies that a majority of bar liquor sales originated in a "stand-up" area and that "a lot" of people who were admitted free went into the stand-up area. Carpenter also testified, however, that a waitress worked the stand-up area (Tr. 159) and Revenue Agent Malcolm testified at defendant's evidentiary hearing that Malcolm and another agent paid an admission fee yet purchased drinks from the bar in the stand-up area (Hearing Tr. 64). Dr. Carlson testified that if *"everybody who was at the bar"* represented a free admission, then the bar liquor sales could have been subtracted from total liquor sales and that this calculation would have made his projection more precise (Tr. 460–464). On such evidence the Court refuses to find that plaintiff purposely concealed relevant information regarding bar register income from Dr. Carlson in order to achieve a more damaging projection.

Defendant next contends that Carpenter's trial testimony establishes facts which contradict the Magistrate's proposed findings. Specifically, defendant contends that Carpenter knew (1) that the cover charge varied when popular entertainment was provided, (2) that single women were admitted free on Tuesdays, and (3) that the price of liquor changed. Defendant also contends that Special Agent Malcolm was informed of changes in the cover charge; that memoranda prepared by Malcolm reflected occasions on which high liquor receipts were accompanied by low door receipts because defendant's friends, regular customers, or groups had been admitted free; and that the cover charge varied occasionally with respect to seating within defendant's club. The Court finds that these

facts are supported by testimony contained in the trial transcript and therefore adopts them for the purposes of this ruling. Nevertheless, the Court also finds that these facts do not contradict any of the findings proposed by the Magistrate.

▉ After a careful review of the record, the trial transcript, and the transcript of defendant's evidentiary hearing, the Court adopts the Magistrate's proposed findings of fact with the exception of numbers 17(b), (c), 23, and 1(c), (d). The Court also makes the following additional findings of fact:

1. Dr. Carlson assumed from the way he thought his data had been collected that the average effect of numerous variables was "already taken into account in the equation." (Tr. 464).

2. Robert Larsen failed to uncover caselaw in which the use of statistical evidence in criminal prosecutions had been rejected (Hearing Tr. 24).

3. Robert Larsen offered the statistical projections prepared by Dr. Carlson into evidence during defendant's trial in order to obtain a conviction on Count II of the indictment (Hearing Tr. 26–27).

4. Robert Larsen excluded the projected door income for Tuesdays from the government's calculations at trial (Hearing Tr. 31).

The record in this case further reveals that plaintiff informed defendant on or about September 22, 1980 that Dr. Carlson would be called to testify at trial regarding statistical projections. On October 3, 1980 the Court granted defendant's request for a two week continuance in order to prepare rebuttal expert testimony. On October 6, 1980 plaintiff voluntarily filed a legal memorandum explaining the rationale underlying Dr. Carlson's computations. On October 14, 1980 the Court granted defendant's *second* motion for a continuance and provided defendant thirty additional days to prepare rebuttal expert testimony. In light of these facts, and in light of all the facts adopted and outlined above, the Court finds that plaintiff's use of statistical projections was not motivated by bad faith, was not intended to harass defendant, and was not calculated to cause a mistrial. The Court also finds that plaintiff was not grossly negligent in the development or use of Dr. Carlson's statistical projections. Accordingly, defendant's motion to dismiss Count II of the Indictment must be denied. In reaching this conclusion, however, the Court has assumed that policies contained in the Fifth Amendment are applicable. For the following reasons, the Court now finds that defendant's motion must be denied for a second, entirely independent reason.

▉ All of the legal precedents cited by defendant in support of his motion to dismiss involve mistrials precipitated by "prosecutorial overreaching." Although the Court already has found no prosecutorial overreaching in this case, the Court reminds defendant that no mistrial occurred. The record reveals that defendant objected to the admissibility of Dr. Carlson's statistical projections on the first day of trial (Tr. 1–b). At that time the Court indicated that it would rule the issue when the evidence was offered (Tr. 1–d). Defendant's counsel accepted that decision and later stated that "I don't believe that the admissibility or nonadmissibility depending on how you rule, I don't think you can rule on that until you hear the rest of the testimony. . . ." (Tr. 1–p). On November 19, 1980 defendant again objected to the admissibility of Dr. Carlson's testimony (Tr. 408–a). The Court denied defendant's motion and admitted the evidence (Tr. 108–g). In its order of January 29, 1981 the Court indicated that it was not fully aware of the nature of Dr. Carlson's analysis until it was introduced at trial, that the reliability of the analysis was questionable, and that the evidence should have been excluded under Rule 403, Fed.R. Evid. Defendant, therefore, was granted a new trial because of *trial error.* In *Burks v. United States,* 437 U.S. 1, 13, 98 S.Ct. 2141, 2148, 57 L.Ed.2d 1 (1978) the Supreme Court stated that the reversal of a criminal conviction for trial error:

is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.,* incorrect receipt or rejection

of evidence.... When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

In this case the Court erred in admitting into evidence the testimony of Dr. Carlson. The Court has granted defendant a new trial in order to correct that error. Consequently, the Court finds that, under these circumstances, the Double Jeopardy Clause does not bar retrial on Count II of the Indictment.

For all of the reasons outlined above, it is hereby

ORDERED that defendant's motion to dismiss Count II of the Indictment is denied; and it is further

ORDERED that defendant's motion for the production of documents also is denied.