**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Charles EVERS,**
**Defendant-Appellant.**

No. 76–2788.

United States Court of Appeals,
Fifth Circuit.

March 16, 1978.

Michael S. Fawer, Matthew H. Greenbaum, New Orleans, La., J. Kearney Dossett, Jackson, Miss., for defendant-appellant.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Sect., Robert E. Lindsay, Meyer Rothwacks, Attys., Tax. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This is a double jeopardy case involving the declaration of a mistrial because of certain prejudicial, irrelevant testimony given by a Government witness during the trial. The district court's declaration of a mistrial over defendant's objection not being dictated by "manifest necessity," we hold the defendant cannot be reprosecuted.

Prior to the start of a second trial, defendant moved for dismissal of the indictment for willful evasion of federal income taxes, 26 U.S.C.A. § 7201, on the ground that a trial would subject him to double jeopardy in violation of the fifth amendment. The district court denied the motion. Under our prior cases defendant could not have appealed from this order until after retrial and conviction. *United States v. Bailey*, 512 F.2d 833 (5th Cir.), *cert. dismissed*, 423 U.S. 1039, 96 S.Ct. 578, 46 L.Ed.2d 415 (1975). After this appeal was filed, however, the United States Supreme Court held that the pretrial denial of a motion to dismiss an indictment on double jeopardy grounds falls within the "collateral order" exception to the final judgment rule first announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and is thus an appealable "final decision" within the meaning of 28 U.S.C.A. § 1291. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed. 651 (1977). We thus may consider the merits of defendant's double jeopardy claim on this appeal.

In 1975 defendant was first tried on the same charges as in this indictment. The Government sought to establish tax evasion by defendant through a "net worth plus nondeductible expenditures" method of proof, which would show an increase in net worth during the three years in question, likely taxable sources for this increase, and consequent underreporting of income. On the fourth day of trial the Government called its final witness, an expert in indirect methods of proving taxable income, to explain a detailed 23-page summary of the Government's evidence. During cross-examination, defense counsel attempted to negate the sources of unreported taxable income proposed by the Government. His questioning elicited a response suggesting one source of income might have been campaign contributions in 1968, the year defendant ran for Congress.

Fawer: Thank you. You did not hear Agent Millis, who conducted the investigation, give any additional facts about Eunice's Department Store, did you?

Sykes: No, sir, I didn't.

Fawer: There leaves it, then, we have one other source, don't we, according to the government's contention?

Sykes: In '68?

Fawer: '68.

Sykes: What's that?

Fawer: Well, you tell me. What other taxable source is there for a $53,-000.00—. You want to tax this man on $53,000.00. What's the taxable source?

Sykes: What could be a taxable source?

Fawer: What—. Yes, according to the government's documents?

Sykes: Well, I believe he ran for Congress that year.

Fawer: Is it not a fact that the government had—. I object to this, Your Honor. The government has specifically disavowed that there is any money that came in from any campaign.

The Government had never advanced this theory in its bill of particulars or during the trial. Upon defense counsel's immediate objection, counsel adjourned to the judge's chambers.

Defense counsel initially moved for a mistrial. Admitting its equal surprise at the witness' answer, the Government opposed the motion and suggested, as an alternative, that the answer merely be stricken from the record and the jury instructed to disregard it. The court, however, after much discussion, stated: "I believe [the statement] is prejudicial to the extent that I should declare a mistrial." At that point counsel for defendant requested a private conference with his client "before you make a final ruling on that, Your Honor." The court replied, "Sure."

Upon returning to the judge's chambers, defense counsel advised the court that because defendant was anxious not to retry the case, and because he did not think the evidence sufficient for the case to go to the jury, he would withdraw his motion for a mistrial. Instead of a mistrial, he asked the court to instruct the jury that the witness' answer should be disregarded and that there was no evidence of any money coming from political contributions. Nevertheless, the court made final its earlier tentative decision to grant the mistrial, over defendant's objection. Upon returning to the courtroom, defense counsel made a motion to dismiss the indictment for insufficient evidence, which the court denied.

■ A clear distinction lies between mistrials granted at the request of the defendant, or with his consent, and those declared by the court *sua sponte*, with respect to whether the double jeopardy clause bars reprosecution. *United States v. Dinitz*, 424 U.S. 600, 606–608, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In the absence of a motion or consent by the defendant, the Supreme Court has dictated that there can be no new trial unless there was a "manifest necessity" for the mistrial or "the ends of public justice would otherwise be defeated." *United States v. Jorn*, 400 U.S. 470, 481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971), *quoting United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). This doctrine of "manifest necessity" recognizes the significant interest of the defendant in deciding whether, "once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn*, 400 U.S. at 486, 91 S.Ct. at 558. Accordingly, in determining whether a mistrial was properly granted by the court *sua sponte*, the defendant's right to have his trial completed by a particular tribunal is to be balanced against the public's interest in fair trials designed to end in just judgments, taking into consideration all the facts and circumstances of the individual case. *Wade v. Hunter*, 336 U.S. 684, 689–690, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

■ Although defense counsel initially moved for a mistrial, he unequivocally withdrew his motion prior to the time the court's ruling was made final. Thus the propriety of the court's decision must be tested by the "manifest necessity" standard. "The determination whether 'manifest necessity' exists for the declaration of a mistrial is, of course, an inquiry particularly suited to case-by-case analysis, and not hospitable to generalities." *United States v. Spinella*, 506 F.2d 426, 432 (5th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 227, 46 L.Ed.2d 147 (1975).

■ Applying this test to the record in this case, we conclude that the trial judge

erred in declaring a mistrial. The voicing of potentially prejudicial remarks by a witness is common, and any prejudice is generally cured efficiently by cautionary instructions from the bench. This Court has expressly suggested the curative instruction remedy as an alternative to a mistrial. *United States v. Kin Ping Cheung*, 485 F.2d 689 (5th Cir. 1973). Evidence withdrawn from the jury with a direction that it be disregarded may be the basis of reversible error only in cases in which the remark is so highly prejudicial as to be incurable by the trial court's admonition. *United States v. Klein*, 546 F.2d 1259, 1263 (5th Cir. 1977); *United States v. Smith*, 517 F.2d 710, 711 (5th Cir. 1975). Both parties voiced the opinion that a cautionary instruction to the jury was a viable alternative to the declaration of a mistrial.

Here, the objectionable remark merely suggested that a source of unreported income might have been campaign contributions. No motion for mistrial was made in the presence of the jury. None of the court's or counsel's concern about the testimony, other than defense counsel's objection, had been revealed to the jury. Since defendant's candidacy for public office had been alluded to in his counsel's opening statement, the 1968 campaign did not come as a surprise to the jury. The court could have dissipated the taint of any improper inference by means of an appropriate cautionary instruction or a stated stipulation from the Government.

Of course, our Court has previously rejected any notion that a district court abuses its discretion simply because it "could have" taken another alternative course to a mistrial. *United States v. Pridgeon*, 462 F.2d 1094 (5th Cir. 1972); *Jones v. Anderson*, 404 F.Supp. 182 (S.D.Ga.1974), *aff'd*, 522 F.2d 181 (5th Cir. 1975).

In *Smith v. Mississippi*, 478 F.2d 88 (5th Cir.), *cert. denied*, 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973), this Court noted, in affirming a trial judge's declaration of a mistrial:

> The trial judge made a sincere effort to determine whether 'the ends of public justice' . . . would be better obtained by declaring a mistrial and beginning anew. He was sensitive to the opposing requirements on his discretion. It is of no particular concern, whether we would or would not have reached a different result as a trial court. What is of controlling importance is that the . . trial judge first painstakingly weighed all the factors present and thereupon exercised the discretion invested in him. His declaration of a mistrial was not unreasonable.

*Id.* at 96. In that case a juror made certain remarks which indicated that he had prejudged the case. Before any evidence had been introduced, the prosecution moved for a mistrial. After hearing arguments from both sides, the trial judge found the remark prejudicial to the state's ability to receive a fair trial and granted the motion. The defendant was ultimately retried and convicted. In a federal habeas corpus action defendant challenged his conviction on double jeopardy grounds. We affirmed the denial of that challenge.

The language quoted from *Smith* properly recognizes the broad discretion accorded the trial court in determining whether a mistrial is required. *See United States v. Gori*, 367 U.S. 364, 366, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). It does not, however, mean the trial judge's discretion to declare a mistrial is absolute so long as he carefully considers and rejects available alternatives. Appellate review of decisions affecting rights so fundamental as the right not to be twice placed in jeopardy cannot be limited merely to ascertaining whether the trial judge went through the ritual of rejecting alternatives to mistrial.

The issue here involves more than a mere choice of suitable alternatives. Here the mistrial was declared for *defendant's* benefit, but over his vehement opposition. This distinguishes the case from *Smith*, where the mistrial was declared for the *state's* benefit, over defendant's objection. In *Smith* the state asserted an interest which was entitled to protection in spite of defendant's objection. In this case defendant expressly disclaimed any interest in a mis-

trial. He explicitly stated he wished to have his fate decided by the jury first empaneled and to avoid "the anxiety and heartbreak of another trial," the very concern with which the double jeopardy clause deals. *See Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

The mistrial was declared on the fourth day of trial, as a result of the testimony of the Government's last witness. At that point defense counsel was confident the entire indictment would be dismissed at the close of the Government's case. Indeed, defendant not only made clear his willingness to accept a curative instruction, but expressly waived his right to rely on the prejudicial comment as a ground for reversal should he be convicted. There thus was no interest to be protected by ordering a mistrial *sua sponte* over the objections of both the defendant and the United States.

Taking into consideration all the facts and circumstances of this case, it appears that the granting of a mistrial was not a "manifest necessity," that defendant had a right to have his case decided by the jury at that time, and that reprosecution of defendant would violate the double jeopardy clause of the fifth amendment. The indictment is hereby dismissed.

REVERSED AND RENDERED.