Lyndale **WALKER**, Appellant,

v.

A. L. **LOCKHART**, Director, Arkansas Department of Correction, Appellee.

No. 79–1796.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1980.

Decided May 8, 1980.

Rehearing and Rehearing En Banc Denied June 12, 1980.

James E. Davis, Texarkana, Ark., for appellant.

Ray E. Hartenstein, Asst. Atty. Gen., Little Rock, Ark., (argued), and Steve Clark, Atty. Gen., Little Rock, Ark., on brief, for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and HARPER, District Judge.*

HENLEY, Circuit Judge.

This is a habeas corpus proceeding brought by an inmate of the Cummins Unit of the Arkansas Department of Correction. Lyndale Walker, hereinafter called petitioner, complains that in connection with his 1977 felony convictions in the Circuit Court of Nevada County, Arkansas he was subjected to double jeopardy in violation of the fifth amendment to the Constitution of the United States.

■ Petitioner commenced this action under the provisions of 28 U.S.C. § 2254 in the United States District Court for the Western District of Arkansas.[1] The district court held a full evidentiary hearing and filed a memorandum opinion denying relief. This appeal followed.

In early 1976 petitioner and another individual identified as Jackie Cooper were arrested by Nevada County authorities and charged with the burglary of and felony theft of property from a business establishment in the small town or community of Bluff City in Nevada County.

In addition, petitioner, individually, was charged under the pertinent Arkansas statute with being an habitual criminal; if convicted upon the latter charge as well as on the substantive charges petitioner would be subject to substantially enhanced punishment.

Petitioner was unable to furnish bail and was held pending trial in the county jail of Nevada County in Prescott, Arkansas. He remained there until he was tried in October, 1976. In the meantime, Jackie Cooper had given a statement to investigating officers that implicated petitioner in the burglary and theft.

When the case came on for trial originally, petitioner was represented by appointed counsel, Glen Vasser of Prescott, and Cooper was represented by another attorney, Charles L. Honey of Prescott. The trial was to a jury, with Circuit Judge John Goodson of Texarkana, Arkansas, presiding.

The trial having begun, Cooper was called as a witness by the State. In his testimony Cooper repudiated his statement implicating petitioner in the crime.

---

* The Honorable Roy W. Harper, United States Senior District Judge, Eastern District of Missouri, sitting by designation.

1. The Cummins Unit of the Arkansas Department of Correction where petitioner is confined is located in the Eastern District of Arkansas, but Nevada County is located in the Texarkana Division of the Western District. Therefore, venue was properly laid in the Western District. 28 U.S.C. § 2241(d).

Immediately after the repudiation and before the case could go further, Judge Goodson was called to the telephone. He left the bench with Cooper still in the witness box, with the jurors present, and with petitioner, the prosecuting attorney, and both defense lawyers also present.

Before Judge Goodson returned to the courtroom, Mr. Honey approached his client, Jackie Cooper, and told him in a "low voice" to cease lying. This remark was overheard by counsel, and it is inconceivable that it was not overheard by at least one or more of the jurors since, according to the evidence, there was little more than an arm's length distance between the witness box and the jury box.

Mr. Vasser feared that the remark had in fact been overheard by the jury, and that it was highly prejudicial to his client. Accordingly, when the trial judge returned to the bench Mr. Vasser indicated that he desired to move for a mistrial.

The circuit judge then excused the jury for lunch, and he and counsel for both sides and the petitioner repaired to chambers at which time Mr. Vasser formally moved for a mistrial. The prosecuting attorney indicated that he had no objection to the granting of the motion, and it was formally granted.

At this point the judge and the lawyers went to lunch and petitioner was carried back to jail for his noon meal.

During the noon hour petitioner decided that he did not want the case mistried because if a mistrial were declared he would have to remain confined in the local jail for a period of time about equal to that during which he had already been confined.[2]

Before court reconvened after lunch petitioner and his lawyer had a brief conference in the course of which petitioner stated that he did not want the case mistried. Counsel told petitioner that he thought that the case should be mistried. Petitioner, however, adhered to his position and requested counsel to advise Judge Goodson of his attitude. Counsel agreed to do so, and the question of whether he did or not is a crucial one in this case.

After the noon hour Judge Goodson reconvened court, told the jury that a mistrial had been declared and excused the jury from further consideration of the case. He then heard Mr. Vasser on behalf of his client formally object to the mistrial and also permitted petitioner to make a statement on his own behalf. As of that time it was too late for the circuit judge to have done anything about the mistrial order if he had been inclined to do so.

By that time affairs had reached the stage at which it was clear that a serious difference had arisen between petitioner and Mr. Vasser. The latter was relieved of his duties, and in due course petitioner's present counsel, Mr. James E. Davis of Texarkana, was appointed to represent him.

After the mistrial had been declared in the fall of 1976 petitioner was returned to the county jail where he remained until the second trial of the case in the spring of 1977.

In the interim between the two trials petitioner moved pro se and by new counsel to dismiss the information against petitioner on the grounds that he had been denied his sixth amendment right to a speedy trial, and that a second trial would subject petitioner to double jeopardy prohibited by the fifth amendment as carried forward into the fourteenth amendment.

A second jury trial was presided over by Judge Hugh Lookadoo of Arkadelphia. The petitioner was found guilty and was sentenced to imprisonment for one term of ten years and another term of five years. Judge Lookadoo imposed sentence but directed that petitioner be given credit for the time that he had spent in jail.

Petitioner appealed to the Supreme Court of Arkansas assigning a number of errors including his claims that he had been denied a speedy trial and had been subjected to

---

2. The Circuit Court of Nevada County holds two regular terms a year, one beginning on the first Monday in January and the other on the first Monday in July. Ark.Stat.Ann. § 22–310.

double jeopardy. Those contentions, and others, were rejected, and the conviction and sentence of petitioner were affirmed. *Walker v. State*, 556 S.W.2d 655 (Ark.1977). As to petitioner's contentions about speedy trial and double jeopardy, the Arkansas court said (556 S.W.2d at 656):

> First, there is no merit in the argument that Walker was subjected to double jeopardy and denied a speedy trial. At the first trial of the case an incident occurred during a recess that led Walker's attorney to ask for a mistrial. The State did not resist the motion. After the mistrial had been granted and the jury had been discharged, Walker himself asked that a mistrial not be declared. Of course, it was then too late for that request to be granted, as the jury had been discharged; so the court denied Walker's request.
>
> The court's action was plainly proper, for in a matter of this kind the defendant must be bound by his attorney's judgment with regard to the motion for a mistrial. That the State acquiesced in the motion confirms the correctness of defense counsel's position. Hence there was neither double jeopardy nor a denial of a speedy trial, for the time ran anew after the declaration of a mistrial. Rule 28.2(c), Rules of Criminal Procedure (1976). It is conceded that the case was retried within the time allowed by Rule 28.1(a).

Having exhausted state remedies, petitioner, still represented by Mr. Davis, commenced his action in the district court on January 9, 1979. Respondent (actually the State) resisted the motion. A full evidentiary hearing was held in the district court in July, 1979. In the course of that hearing petitioner testified and called witnesses. There was also introduced into evidence a complete transcript of the proceedings in the Nevada County circuit court, and the district judge caused a transcript of the habeas corpus hearing to be made.

The district judge considered all of the materials before him and on July 30, 1979 filed his memorandum opinion denying relief. A formal order to that effect was entered on the same day, and this appeal followed.

In his initial proceeding in the district court petitioner contended both that he had been denied a speedy trial and that he had been subjected to double jeopardy. The district court rejected both contentions. The speedy trial contention was insubstantial, and it is not being pressed in connection with this appeal. We are, therefore, concerned with the double jeopardy claim only.

■ The petitioner contended and testified in the district court that he was not present in chambers when defense counsel moved for a mistrial and when it was formally granted by the circuit judge. The district court discredited petitioner's testimony on that point and found that he was present and did not object to the granting of the motion that Mr. Vasser had made. That finding is fully supported by the transcript of the 1976 proceedings in the circuit court, and by evidence heard by the district court. Certainly it was not clearly erroneous. Accordingly, we accept that finding. Let us make it clear, however, that the proceeding in chambers about which we are talking took place prior to the lunch break taken by the circuit judge and the lawyers, and prior to the time at which the jury returned to the box, was told that a mistrial was being declared, and that the jurors were excused from further consideration of the case.

It is at this point that the importance of the question of whether Mr. Vasser advised Judge Goodson during the noon hour of petitioner's opposition to the granting of a mistrial comes into focus. Because, if the circuit judge was advised of the defendant's position, simply ignored it, and proceeded to go into the courtroom and discharged the jury, at which point the judge's action became irreversible, we have a serious due process problem in the light of the holding of the Supreme Court of the United States in *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

■ That case teaches that in general defense counsel in a criminal case cannot validly waive a constitutionally protected right of the defendant in the absence of an intelligent and voluntary consent by the defendant to the action that counsel proposes to take, and certainly that rule comes into play where the defendant expressly conveys to his attorney his objection to the proposed action.

The *Janis* rule may not apply, however, in the unusual case in which exceptional circumstances exist which make it mandatory in the interest of justice to permit a waiver of a constitutional claim over the objection of the defendant. *Brookhart v. Janis, supra,* 384 U.S. at 7, 86 S.Ct. at 1248, *citing Henry v. Mississippi,* 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965).

Certainly, the right to be free from double jeopardy is a federally protected right, and in the absence of exceptional circumstances as suggested in *Janis* and *Henry, supra,* it would seem clear that the right to be free from such jeopardy includes the right to be free from double jeopardy resulting from a second trial following an improperly granted original mistrial over the objection of the defendant.

If during the noon hour that has been mentioned, the circuit judge was in fact advised of the attitude of the petitioner it would have been easy for the judge to have called petitioner and counsel back into chambers and to have explored the matter further. As of that time the jury had not been advised of a mistrial and discharged. To put it this way, the judge could have done before discharging the jury what he did in open court after the jury had been discharged.

As to whether the circuit judge was advised of petitioner's position prior to discharging the jury, the findings of the district court are indefinite to say the least.

■ Mr. Vasser testified before the district court that at the instance of the petitioner he did advise the circuit judge during the noon hour that the petitioner did not want a mistrial. Circuit Judge Goodson while a resident of Texarkana where the habeas corpus hearing was held was not called as a witness, and apparently no effort was made to secure his testimony by deposition or otherwise.

To the extent that the district court found that Judge Goodson was not advised during the noon hour of petitioner's objection to having a mistrial declared, we consider such a finding to have been clearly erroneous, and we reject it.

Nor can we uphold the district court's decision on the basis of the holding of the Arkansas Supreme Court that has been mentioned, which basis is related to 28 U.S.C. § 2254(d). That subsection of § 2254 provides in substance that where in a federal habeas corpus case a factual issue raised by petitioner has been considered by the state courts after an appropriate hearing, a determination of the state courts is presumptively correct, unless one or more of eight defects appear. Here, the specific double jeopardy contention raised by petitioner in this case based on the communication to the circuit judge of petitioner's objection to a mistrial has never been the subject of any state court determination following a hearing as contemplated by the statute.

The communication of Mr. Vasser to the circuit judge was informal and off the record and naturally did not appear in the transcript that the Arkansas Supreme Court considered. In the course of the direct appeal petitioner apparently did not deny that he was present in chambers when the defense motion for a mistrial was made and confessed by the prosecuting attorney. There was nothing in the record before the Arkansas Supreme Court to indicate that the circuit judge had been advised informally that petitioner was objecting to a mistrial.

We are also unable to agree with the district court that by noon on October 20, 1976 such a difference had arisen between petitioner and Mr. Vasser, that Vasser could no longer properly and ethically continue to represent petitioner. In our view had the circuit judge upon being advised of

the attitude of petitioner called him and counsel back into chambers, and had overruled the motion for a mistrial, the trial could have proceeded properly with Mr. Vasser representing petitioner.

■ We conclude that the general rule of *Janis, supra*, applies unless exceptional circumstances existed which required the circuit judge in the ends of justice to order a mistrial even over the objection of petitioner. We are satisfied that such circumstances existed.

As indicated, the statement made by Mr. Honey to his client, Jackie Cooper, was overheard by defense counsel, was apparently overheard by the prosecuting attorney, and must have been heard by some or all of the jurors. The testimony of Cooper, which Mr. Honey labelled as false, exculpated petitioner from the crimes in question. That testimony directly contradicted an earlier statement made by Cooper to law enforcement officers, and Honey's characterization of the testimony as false was found to have a seriously prejudicial effect on the jury. Moreover, any inquiry by the circuit judge to the jurors as to the statement in question would simply have enhanced the prejudice.

In such circumstances we think that the ends of justice imperatively commanded the granting of a mistrial even over the objection of the defendant, which objection was but an afterthought when the defendant realized that he would have to remain in the Nevada County jail pending retrial. Had the trial court denied the defense motion for a mistrial, that action might well have been the subject of a post-trial complaint on the part of petitioner. For a general discussion of the subject see our opinion in *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977).

The judgment of the district court is affirmed.

McMILLIAN, Circuit Judge, dissenting.

The majority opinion addresses with much authority the issues presented in the instant case and I find myself in substantial agreement with the analysis herein. However, because I find the ultimate conclusion unacceptable, I dissent.

A clear distinction lies between mistrials granted at the request of the defendant, or with his consent, and those declared by the court *sua sponte*, with respect to whether the double jeopardy clause bars reprosecution. *United States v. Dinitz*, 424 U.S. 600, 606–08, 96 S.Ct. 1075, 1078–80, 47 L.Ed.2d 267 (1976). In the absence of a motion or consent by the defendant, the Supreme Court has dictated that there can be no new trial unless there was a "manifest necessity" for the mistrial or "the ends of public justice would otherwise be defeated." *United States v. Jorn*, 400 U.S. 470, 481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971), *quoting United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). This doctrine of "manifest necessity" recognizes the significant interest of the defendant in deciding whether, "once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn*, 400 U.S. at 486, 91 S.Ct. at 557.

. . . "The determination whether 'manifest necessity' exists for the declaration of a mistrial is, of course, an inquiry particularly suited to case-by-case analysis, and not hospitable to generalities." *United States v. Spinella*, 506 F.2d 426, 432 (5th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 227, 46 L.Ed.2d 147 (1975).

*United States v. Evers*, 569 F.2d 876, 878 (5th Cir. 1978).

It cannot be gainsaid that witness Cooper's attorney's remark to Cooper in open court and in the presence of the jury was not only inappropriate but also prejudicial. Nonetheless, if it was true that (1) appellant's attorney requested a mistrial, (2) the trial court granted the mistrial in chambers, (3) appellant was present in chambers when the mistrial was granted, (4) the jury was unaware of the trial court's ruling, and (5) either appellant or his attorney made known to the trial court, *before* the trial

court informed the jury of the declaration of a mistrial, appellant's request that the trial court vacate its ruling and proceed with the trial, then the trial court was duty bound to recognize and grant appellant's request unless there was manifest necessity for a mistrial or the ends of public justice required otherwise. *E. g., United States v. Rich*, 589 F.2d 1025, 1028 (10th Cir. 1978); *United States v. Bobo*, 586 F.2d 355, 362 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979); *United States v. Evers, supra*, 569 F.2d at 879 (reprosecution barred where there was no "manifest necessity" for mistrial within the rule that a declaration of mistrial over objection of defendant requires justification of manifest necessity); *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977).

I do not find *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), cited by the majority, apposite. *Henry*, cited with approval in *Brookhart v. Janis*, 384 U.S. 1, 7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314 (1966), involved a deliberate by-pass of counsel with the contemporaneous objection rule as a part of trial strategy. The present case has nothing to do with trial strategy, but involves whether or not a defendant can waive or give up a supposed advantage, *i. e.*, the declaration of a mistrial. I also distinguish those double jeopardy cases which typically deal with the illness of the trial judge, *e. g., United States v. Lynch*, 598 F.2d 132, 135 (D.C.Cir. 1978) (per curiam) (cases cited therein), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1287, 59 L.Ed.2d 498 (1979), or the disability of a juror, *e. g., United States v. Potash*, 118 F.2d 54 (2d Cir. 1941), or bias of a juror, *e. g., Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894), or a distraught witness, *e. g., United States v. Walker*, 557 F.2d 741 (10th Cir. 1977), or involved a defective indictment, *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Such cases are representative of "those instances where 'a defendant's valued right to have his trial completed by a particular tribunal must . . . be subordinated to the public's interest in fair trials designed to end in just judgments.' " *United States*

*v. Bobo, supra*, 586 F.2d at 365, *citing Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Similarly, the double jeopardy clause does not bar reprosecution "after a conviction is reversed on appeal, or on collateral attack. Likewise, a second prosecution is not prohibited when the jury is dismissed because they cannot reach a verdict, because of the disqualification of a juror, because of a 'mere irregularity of procedure,' or because of a tactical necessity in wartime." *United States v. Starling*, 571 F.2d 934, 938 (5th Cir. 1978) (citations omitted).

In my opinion the trial court did not exercise its "sound discretion" in declaring a mistrial in the present case, especially in light of the "high degree" of manifest necessity required before the declaration of a mistrial is appropriate. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Further, I cannot agree that, *under the circumstances in the present case, if true*, the trial court can or should become so paternalistic as to deny appellant his "valued right to have his trial completed by [that] particular tribunal," *Wade v. Hunter, supra*, 336 U.S. at 689, 69 S.Ct. at 837. Appellant argued that he informed his attorney, *before* the trial court notified the jury of the declaration of a mistrial, that he wanted to proceed with the trial. In effect, appellant stated that "he wished to have his fate decided by the jury first impanelled and to avoid 'the anxiety and heartbreak of [and delay in awaiting] another trial,' the very concern with which the double jeopardy clause deals." *United States v. Evers, supra*, 569 F.2d at 880, *citing Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). I am reluctant, on this record, to conclude that appellant "waived his constitutional right not to be twice placed in jeopardy for the same offense unless he did so knowingly and intelligently." *United States v. Rich*, 589 F.2d 1025, 1032–33 (10th Cir. 1978), *citing Cox v. Kansas*, 456 F.2d 1279 (10th Cir. 1972). *Contra, United States v. Dinitz, supra*, 424 U.S. at 609 n.11, 96 S.Ct. at 1080; *United States v. Bobo, supra*, 586 F.2d at

364–65; *United States v. Jamison*, 164 U.S. App.D.C. 300, 306, 505 F.2d 407, 413 (1974).

Assuming appellant's statement of the facts is accurate, I would find that the trial court's declaration of a mistrial was not justified by manifest necessity or required to serve the ends of public justice and, accordingly, would hold that appellant's second trial was barred by the double jeopardy clause. However, inasmuch as the record in the present case is unclear about what happened and when, compare *Arizona v. Washington, supra,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717, a hearing to determine whether appellant's request to vacate the trial court's order granting a mistrial was made knowingly and intelligently would have been appropriate. Therefore, I would retain jurisdiction of this appeal and would remand to the district court for further findings, in particular whether, before the trial court declared a mistrial in open court, the trial court knew that appellant wanted to proceed with the trial and opposed his counsel's motion for a mistrial.