[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12981
Non-Argument Calendar

_____

D.C. Docket No. 8:11-cr-00323-EAK-TBM-12

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN C. WEILER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 21, 2016)

Before TJOFLAT, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Brian Weiler appeals his conviction on one count of conspiracy to possess

with intent to distribute and to distribute oxycodone, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(C), and 846, and his 97-month sentence, imposed at the low end

of the guideline range. The charge arose out of Weiler's involvement with and work at pharmacies in Tampa, Florida that were operated as "pill mills" that dispensed narcotics, primarily oxycodone. On appeal, Weiler argues that the district court erred by: (1) denying his motion for a judgment of acquittal based on insufficient evidence; (2) admitting irrelevant, prejudicial evidence at trial; (3) denying his motions for a mistrial and for a new trial based on the admission of prejudicial evidence; (4) abused its discretion by denying his motion for a new trial based on the admission of irrelevant and prejudicial evidence; (5) denying him a safety-valve reduction at sentencing; (6) miscalculating the amount of oxycodone attributable to him; (7) denying him a mitigating role adjustment; and (8) imposing a procedurally and substantively unreasonable sentence. After thorough review, we affirm.

## I.

Weiler begins by raising various issues concerning evidence that was admitted at trial about VIP Pharmacy, arguing that he was charged solely with a conspiracy at New Tampa Pharmacy. The indictment, however, charged that Weiler and twelve others, "from an unknown date through on or about" September 29, 2011, had conspired with each other and "with others, both known and unknown to the grand jury," to possess with intent to distribute and to distribute oxycodone, in violation of 21 U.S.C. § 846. This broad language in the indictment

2

plainly charged Weiler with a single, overarching conspiracy to distribute oxycodone, and covered Weiler's activities with various conspirators at any location. Thus, Weiler does not expressly claim on appeal a material variance between the conspiracy evidence presented and the conspiracy charged in the indictment, nor could he. Instead, Weiler challenges the district court's evidentiary rulings and the sufficiency of the evidence.

First, we are unconvinced by Weiler's claim that the court erred by denying his motion for a judgment of acquittal based on insufficient evidence. We review de novo a denial of a judgment of acquittal, viewing the facts and drawing all inferences in the light most favorable to the government. United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002). The district court's denial of "motions for judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Young, 906 F.2d 615, 618 (11th Cir. 1990). A jury is free to choose among reasonable constructions of the evidence. United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983).

3

The Supreme Court has held that in a conspiracy trial, the jury must consider each defendant's case separately in determining his participation in the scheme, and must take care to consider evidence relating to each conspiracy presented, as it relates to the charged conspiracy. Kotteakos v. United States, 328 U.S. 750, 769-70 (1946). We will not reverse a conviction because a single conspiracy was charged in the indictment, while multiple conspiracies were proven at trial, unless the variance between the indictment and the evidence is: (1) material, and (2) the material variance substantially prejudiced the defendant. United States v. Richardson, 532 F.3d 1279, 1284 (11th Cir. 2008). To determine whether a material variance existed, we consider whether, viewing the evidence in the light most favorable to the government, a reasonable juror could have found the existence of a single conspiracy beyond a reasonable doubt. Id.

To assess whether a jury could reasonably have found a single conspiracy beyond a reasonable doubt, we consider: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants. United States v. Huff, 609 F.3d 1240, 1243 (11th Cir. 2010). The government also must prove interdependence amongst co-conspirators. United States v. Seher, 562 F.3d 1344, 1366 (11th Cir. 2009). We've defined "common goal" broadly, with "common" meaning "similar" or "substantially the same." Id. A single conspiracy is shown if a defendant's actions facilitated the endeavors of other co-conspirators,

4

or facilitated the venture as a whole.  Id.  Each co-conspirator does not have to be involved in every part of the conspiracy.  Id.  In United States v. Baker, 432 F.3d 1189, 1232-33 (11th Cir. 2005), abrogated on other grounds by Davis v. Washington, 547 U.S. 813 (2006), we held that a reasonable jury could have found the existence of a single conspiracy even though the defendant's involvement in a drug trafficking scheme was limited.  We explained that because the defendant was well acquainted with the other co-conspirators, the jury reasonably could have inferred that he was aware of the nature and scope of the scheme.  Id. at 1233.

Here, Weiler says that the government offered evidence of several conspiracies, but did not present sufficient evidence of guilt as to his personal involvement with the New Tampa conspiracy.  The record shows, however, that the jury heard more than sufficient evidence for it to reasonably conclude beyond a reasonable doubt that Weiler and his co-conspirators were involved in a single conspiracy that took place at both New Tampa and VIP Pharmacies.  Among other things, the testimony showed that Weiler and the others shared a "common goal" -- to work at a pain clinic, mainly dealing in oxycodone -- and used a similar scheme, whereby Weiler worked at both pharmacies and distributed oxycodone to clients without prescriptions.  In addition, testimony established that Weiler worked personally and closely with the VIP and New Tampa owners and employees, so it was reasonable for the jury to infer that he was aware of the nature and scope of

5

the scheme.   For example, Weiler's New Tampa co-conspirator, Retsidistswe Griffith, testified that when she hired Weiler to work as a pharmacist, she knew Weiler could be trusted to cooperate in the conspiracy because he was close friends with a Dr. Heromin, a doctor known to prescribe large quantities of oxycodone for no legitimate medical purpose.   The evidence also revealed an overlap in participants -- Weiler worked at VIP and New Tampa pharmacies, and Dr. Heromin was also connected to both.   Certain participants testified that they had been convicted of conspiring to possess with intent to distribute and to distribute oxycodone.   The jury was free to properly consider Weiler's association with these participants, along with his presence at the scene of the crime -- VIP and New Tampa Pharmacies -- in conjunction with one another and other facts to infer Weiler's knowing and intentional participation in the conspiracy.

In short, the record shows that the government presented more than sufficient evidence to allow a reasonable jury to conclude that Weiler and his co-conspirators, both at VIP and New Tampa pharmacies, were involved in a single conspiracy.   Because the evidence was sufficient to establish a single conspiracy, and there was no material variance between the indictment and the evidence, we need not address whether Weiler was prejudiced by a variance from the indictment.

## II.

We also are unpersuaded by Weiler's claim that the district court abused its discretion by admitting irrelevant, prejudicial evidence. We review a district court's evidentiary rulings for abuse of discretion. United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001). The district court has broad discretion to admit evidence if it has a tendency to prove or disprove a fact in issue, and its decision will not be disturbed on appeal absent a clear showing of abuse of discretion. United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990). We will reverse a district court's erroneous evidentiary ruling only if the error was not harmless. United States v. Bradley, 644 F.3d 1213, 1270 (11th Cir. 2011). An error is not harmless if, in light of the record as a whole, the error may have substantially influenced the outcome of the proceeding. Id.

Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action." Fed. R. Evid. 401. However, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. The balance in making a Rule 403 determination is to be struck in favor of admissibility. Terzado-Madruga, 897 F.2d at 1117. Under Rule 403, if the court determines that evidence is relevant to an issue other than character, it must determine whether the

probative value of the evidence is substantially outweighed by the prejudice arising from it.  See United States v. Butler, 792 F.2d 1528, 1535 (11th Cir. 1986).

To prove a violation of 21 U.S.C. § 846, the government must establish that two or more persons agreed to violate the law and that the defendant knowingly participated in that agreement.  United States v. Baptista-Rodriguez, 17 F.3d 1354, 1369 (11th Cir. 1994).  A jury may infer participation in a conspiracy from the defendant's action with others.  United States v. Mulherin, 710 F.2d 731, 738 (11th Cir. 1983).  While mere association with conspirators and presence at the scene of a crime do not in themselves establish participation in a criminal conspiracy, a jury may properly consider both in conjunction with one another and with other facts to infer knowing and intentional participation in the conspiracy.  United States v. Brantley, 68 F.3d 1283, 1288 n.4 (11th Cir. 1995); see also United States v. Cruz-Valdez, 773 F.2d 1541, 1546 (11th Cir. 1985) ("A jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present.").

Here, Weiler claims that because the conduct and co-conspirators described in the indictment pertain to his involvement with an oxycodone distribution conspiracy at New Tampa Pharmacy, the district court abused its discretion in admitting evidence about his involvement with the oxycodone distribution conspiracy at VIP Pharmacy.  We disagree.  The evidence Weiler challenges on

8

appeal showed that: (1) VIP Pharmacy distributed oxycodone to customers without valid prescriptions; and (2) Weiler worked at VIP as a pharmacist.  Specifically, Marco Beltran, from VIP Pharmacy, testified that Weiler witnessed him selling oxycodone to customers without prescriptions, that he sometimes paid Weiler, in cash, using money from the non-prescription sales, and that Weiler personally accepted "tip money" from a non-prescription customer after giving him 1,000 oxycodone pills.  As we've described above, this case involved a single, overarching conspiracy involving <u>both</u> New Tampa and VIP Pharmacy.  This testimony was, therefore, relevant to prove a fact in issue in the case -- whether Weiler <u>knowingly</u> participated in an agreement to illegally distribute oxycodone.

We cannot say it was outside the scope of the district court's discretion to hold that the relevance of the VIP Pharmacy testimony was not substantially outweighed by its prejudice.  Generally, Rule 403 favors admissibility, and here, the evidence was not misleading or confusing.  Indeed, witnesses testified to VIP Pharmacy's general operations and business scheme, as well as Weiler's relationship to the pharmacy and other conspirators.

Nor did the district court abuse its discretion in admitting a Drug Enforcement Agency ("DEA") investigator's testimony and records she obtained from New Tampa Pharmacy.  At trial, the investigator testified that she met Weiler, who was working at New Tampa as a pharmacist, and that her

9

investigation into the pharmacy revealed that: (1) it handled oxycodone in an atypical manner; (2) it processed an usually high number of prescriptions written by Dr. Heromin for out-of-state patients; and (3) a pharmacist with the initials "BW" (the same as defendant Weiler) filled a number of these Dr. Heromin, out-of-state patient prescriptions.  Further, the investigator testified that a number of oxycodone prescriptions were missing from New Tampa's records from the time period during which Weiler worked there, and that "BW" filled a number of prescriptions that did not have a doctor's signature.  Again, this evidence was relevant because it had a tendency to make it more probable that Weiler <u>knowingly</u> conspired to possess and distribute oxycodone.  Additionally, the district court did not abuse its discretion by determining that the relevance of the testimony relating to New Tampa Pharmacy was not substantially outweighed by its prejudice.  Among other things, the evidence was not misleading or confusing -- witnesses testified to New Tampa Pharmacy's general operations and business scheme, as well as Weiler's relationship to the pharmacy and other conspirators.

## III.

Next, we reject Weiler's claim that the district court abused its discretion in denying his motions for a mistrial.  We review the denial of a motion for a mistrial for abuse of discretion, <u>United States v. Newsome</u>, 475 F.3d 1221, 1227 (11th Cir. 2007), because a trial judge is in the "best position to evaluate the prejudicial effect

of a statement of evidence on the jury," United States v. Delgado, 321 F.3d 1338, 1346-47 (11th Cir. 2003) (quotation omitted).  "A mistrial should be granted if the defendant's substantial rights are prejudicially affected.  This occurs when there is a reasonable probability that, but for the [incident that led to the motion], the outcome of the trial would have been different." Newsome, 475 F.3d at 1227.

We make this determination in the context of the entire trial and in light of any curative instruction.  United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998).  If the court gave an instruction, we will not reverse the denial of a mistrial unless the prejudice was "incurable."  Delgado, 321 F.3d at 1347.  "Furthermore, when the record contains sufficient independent evidence of guilt, any error [is] harmless."  Newsome, 475 F.3d at 1227.  As for inappropriate comments made by testifying witnesses, we've held that "[t]he voicing of potentially prejudicial remarks by a witness is common, and any prejudice is generally cured efficiently by cautionary instructions from the bench."  United States v. Evers, 569 F.2d 876, 879 (5th Cir. 1978).[1]  We assume juries follow the instructions of the trial judge. United States v. Kennard, 472 F.3d 851, 858 (11th Cir. 2006).

Here, Weiler again takes issue with the introduction of evidence about VIP Pharmacy.  He challenges testimony from Beltran that Weiler was friends with another VIP co-conspirator, Louie Fernandez, "dating back [to] when they --

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

[Fernandez] had an internet pharmacy," and testimony from Fernandez that he knew he could safely discuss a "pill mill" in front of Weiler because Fernandez knew Weiler had "been involved in a similar --." Weiler says this evidence suggested he had been involved in nefarious activities in the past, was overly prejudicial, and amounted to inadmissible propensity evidence.

However, Weiler has failed to show that he suffered substantial prejudice from this evidence. For starters, the comments were brief and non-specific, since the witnesses were cut off mid-sentence, when the district court struck them from the record and instructed the jury to disregard them. As we've said, prejudice is usually cured by instructions like these from the bench.

Moreover, there was sufficient independent evidence of Weiler's guilt in the record to render any error harmless. As we've already detailed, Griffith testified that she had hired Weiler to work at New Tampa Pharmacy as a pharmacist, and that she knew Weiler could be trusted to cooperate in the conspiracy. In addition, the DEA investigator testified that a pharmacist with Weiler's initials filled a number of Dr. Heromin's out-of-state patient prescriptions. There was also ample evidence of Weiler's involvement in the oxycodone distribution conspiracy at VIP Pharmacy. On this record, Weiler has not demonstrated that, but for the statements regarding his past conduct, the outcome of the trial would have been different.

IV.

We likewise find no merit to Weiler's claim that the district court abused its discretion by denying his motion for a new trial based on the admission of irrelevant and prejudicial evidence about VIP Pharmacy.  We review for abuse of discretion a denial of a motion for a new trial.  United States v. Sweat, 555 F.3d 1364, 1367 (11th Cir. 2009).  A court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).

Here, the district court did not abuse its discretion in concluding that the interests of justice did not require Weiler to receive a new trial.  As we've held, the VIP Pharmacy testimony was relevant, and was not substantially outweighed by its prejudice.  Nor did Weiler suffer any prejudice from the brief, non-specific comments about his past that were made by the VIP Pharmacy participants.  Furthermore, any potential prejudice against Weiler was cured by the court's instructions.  It was well within the court's discretion to deny him a new trial.

V.

We also are unconvinced by Weiler's claim that the district court clearly erred in denying him a safety-valve reduction at sentencing.  We review the district court's application of the guidelines to its factual findings de novo.  United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998).  We review for clear error a district court's factual determinations in denying a safety-valve reduction.  United States v.

Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997).  For a finding to be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake has been committed."  United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012) (quotation omitted).  Further explaining this standard, we've said:

> [A] trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review.  So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous.

United States v. Rodriguez DeVaron, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) (quotation, citation and emphasis omitted).

In United States v. Brownlee, 204 F.3d 1302, 1304 (11th Cir. 2000), we explained that the safety-valve provision of U.S.S.G. § 5C1.2 allows a court to sentence a defendant in certain drug-possession cases without regard to any statutory minimum sentence, but only if the defendant meets five criteria set forth in § 5C1.2.  For convictions without a mandatory minimum sentence, where a defendant meets the safety-valve criteria, the court must reduce his offense level by two.  U.S.S.G. § 2D1.1(b)(17).

The safety-valve's fifth requirement provides that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  Id. §

14

5C1.2(a)(5).  To meet the requirements of § 5C1.2(a)(5), the defendant has an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.  United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004).  The defendant bears the burden of proving his eligibility for the safety-valve reduction.  Cruz, 106 F.3d at 1557.

Weiler did not establish that he met all five criteria for receiving a safety-valve reduction.  Specifically, he did not demonstrate that he provided the government with all the information he had regarding the conspiracies at issue in this case.  Indeed, the government said that during his proffer Weiler attempted to minimize his role in the offense, and at sentencing he made no effort to show the court that he had provided the government with any information.  On this record, the district court did not clearly err in concluding that Weiler had not satisfied the requirements for a safety-valve reduction.

## VI.

Nor did the district court clearly err in calculating the amount of oxycodone attributable to him.  We review for clear error a district court's factual determination of the drug quantity attributable to a defendant.  Almedina, 686 F.3d at 1315.  When there is no drug seizure or the amount seized at the conclusion of an investigation does not reflect the scale of an offense, the guidelines direct the sentencing court to approximate the quantity of the controlled substance

15

attributable to a defendant, and may consider similar transactions by the defendant. U.S.S.G. § 2D1.1, comment n.5.   Further, a sentencing court may consider quantities of drugs not specified in the count of conviction.   Id.   A court's approximation of drug quantity "may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely speculative."   Almedina, 686 F.3d at 1316 (quotation omitted).   The government bears the burden of establishing drug quantity by a preponderance of the evidence. Id. at 1315.

In this case, the district court relied on specific evidence presented at trial in calculating how much oxycodone to attribute to Weiler.   Testimony and video evidence established that, while at VIP Pharmacy, Weiler illegally distributed or assisted in distributing 100 30-mg oxycodone tablets to Fernandez; 200 30-miligram tablets to a second person; 1000 to a third; and 4,500 to a fourth -- for a total of 5,800 pills.   Other testimony established that while he worked at New Tampa Pharmacy, Weiler illegally distributed oxycodone tablets twice to two persons, for a total of 620, and another 240 tablets to a confidential informant.   On this record, the government established, by a preponderance of the evidence, that Weiler was responsible for 6,660 30-milligram pills of illegally distributed oxycodone, and the sentencing court did not commit clear error in holding him accountable for that amount.

VII.

We also conclude that the district court did not clearly err by failing to grant Weiler a mitigating role adjustment.  We review for clear error a district court's determination of a defendant's role in the offense.  DeVaron, 175 F.3d at 937.  A district court may decrease a defendant's offense level by two levels if it finds the defendant was a "minor participant" in the criminal activity.  U.S.S.G. § 3B1.2(b).  A "minor participant" is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2, comment. (n.5).  "The proponent of the downward adjustment . . . always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence."  DeVaron, 175 F.3d at 939.

In determining whether a minor-role adjustment applies, the district court should consider the following two principles: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct."  Id. at 940.  As for the first prong of the DeVaron analysis, we've explained that, "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which he has already been held accountable -- not a minor role in any larger criminal conspiracy -- should the district court grant a downward adjustment for minor role in the offense."  Id. at 944.  As for the second

17

prong of the DeVaron analysis, we've instructed that a district court should look to other participants only to the extent that they (1) "are identifiable or discernable from the evidence," and (2) "were involved in the relevant conduct attributed to the defendant."  Id.  We've recognized, however, that the first prong set forth in DeVaron may, in many cases, be dispositive.  Id. at 945.

Here, the district court did not clearly err in failing to grant Weiler a mitigating role adjustment.  As for the first DeVaron prong, Weiler did not establish that he played a relatively minor role in the conduct for which he was held accountable.  As we've already detailed, he was held accountable only for oxycodone distributed on days when he was actively working at either VIP Pharmacy or New Tampa Pharmacy.  He was not held accountable for the full amount of oxycodone that either pharmacy illegally dispensed while he was aware of and participated in the conspiracy.  Thus, while he might have been a minor participant in light of the full scope of the conspiracy, he was not a minor participant relative to the conduct for which he was held accountable.  The court did not clearly err in concluding that he did not qualify for a minor-role reduction.

## VIII.

Finally, Weiler has not shown that his sentence is unreasonable.  We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion."  United States v. Pugh, 515 F.3d

18

1179, 1189 (11th Cir. 2008) (quotation omitted).   In reviewing sentences for reasonableness, we perform two steps. Pugh, 515 F.3d at 1190.  First, we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'"   Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).[2]  The district court need not explicitly say that it considered the § 3553(a) factors, as long as the court's comments show it considered the factors when imposing sentence.  United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007).

If we conclude that the district court did not procedurally err, we consider the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," based on the "totality of the circumstances." Pugh, 515 F.3d at 1190 (quotation omitted).  "[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor ... as long as the

---

[2]    The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

sentence ultimately imposed is reasonable in light of all the circumstances presented." United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted). However, a court may abuse its discretion if it (1) fails to consider relevant factors that are due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing a proper factor unreasonably. United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). Also, a court's unjustified reliance on any one § 3553(a) factor may be a symptom of an unreasonable sentence. United States v. Crisp, 454 F.3d 1285, 1292 (11th Cir. 2006).

When a district judge has properly calculated and reviewed the guideline range he has necessarily given "significant weight and consideration to the need to avoid unwarranted disparities," because the Sentencing Commission considered avoidance of unwarranted disparities when it set the guideline ranges. Gall, 552 U.S. at 54. A defendant may not rely on another co-conspirators' sentence to show unwarranted disparities unless the defendant has shown that he is similarly situated. United States v. McNair, 605 F.3d 1152, 1231-32 (11th Cir. 2010).

The party challenging the sentence bears the burden to show it is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). While we do not automatically presume a sentence falling within the guideline range to be reasonable, we ordinarily expect that sentence to be reasonable. United

States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). A sentence imposed well below the statutory maximum penalty is another indicator of reasonableness. United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

Weiler has not shown that his 97-month sentence is unreasonable in light of the record and the § 3553(a) factors. As for procedural unreasonableness, we've already concluded that the court did not clearly err in denying him either a safety-valve or mitigating role reduction, nor in calculating the amount of oxycodone attributable to him. Thus, the district court did not commit any significant procedural error, and properly calculated Weiler's guideline range.

Nor is his sentence substantively unreasonable. The district court made clear that it had carefully reviewed the guideline range, and analyzed the § 3553(a) factors -- including Weiler's recovery from drug-addiction, the need to provide deterrence to others, the impact of the crime on the community, and his role within the larger offense -- to ensure that it imposed an individualized sentence. Moreover, the court's sentence of 97 months' for Count 1 represented the lowest end of the applicable guideline range of 97-to-121 months', and the sentence was also well below the 20-year statutory maximum penalty for Count 1.

**AFFIRMED**.

21